(March 4, 1911.)

EUGENE FISCHER, Appellant, v. THOMAS J. DAVIS et al., Respondents.

[116 Pac. 412.]

RIPARIAN RIGHTS—OBSTRUCTIONS TO FLOW OF STREAM—RIGHT OF RIPARIAN OWNER TO MAINTAIN ACTION.

(Syllabus by the reporter.)

1.   Riparian owners of lands abutting upon a stream, whether navigable or unnavigable, have the right to place and maintain upon their lands such barriers as will prevent their lands from being overflowed and damaged by the stream, and for the purpose of keeping the same within its natural channel.

2.   A riparian owner of lands abutting upon a stream has no right to place obstructions out into the stream for the purpose of changing the natural course of the river, or for any other purpose that would do damage to a riparian owner on the opposite side, or to owners of land abutting upon said stream either above or below.

3.   A riparian owner upon any of the streams of this state, whether navigable or unnavigable, takes to the thread of the stream (citing *Johnson v. Johnson,* 14 Ida. 561, 95 Pac. 499, 24 L. R. A., N. S., 1240, and *Lattig v. Scott,* 17 Ida. 506, 107 Pac. 47), and may maintain an action for an obstruction in such stream which diverts the stream or a portion thereof from its natural course to his damage.

APPEAL from the District Court of the Third Judicial District, for the County of Ada.   Hon. Fremont Wood, Judge.

An action to secure a permanent injunction against maintaining obstructions in the Boise river.   Plaintiff appeals

from a modified order of the lower court, partially restraining defendant. *Reversed.*

B. F. Neal, for Appellant.

The owner of land bordering on a body of water is entitled to have the relation of the water to his land remain unchanged so far as interference by third persons or the public are concerned. (*Geurkink v. Petaluma,* 112 Cal. 306, 44 Pac. 570; *Montague v. Jefferson,* 7 Kan. App. 160, 53 Pac. 145; Farnham on Waters and Water Rights, secs. 76, 79, 85.)

A riparian proprietor is liable if he diverts the flow of a stream on to another's land to his injury. (*Oldenburg v. Oregon Sugar Co.,* 39 Or. 564, 65 Pac. 869; Farnham on Waters and Water Rights, sec. 492.)

A land owner is not permitted to obstruct the flow of a stream on his land to the injury of an adjoining owner. (2 Farnham on Waters and Water Rights,' sec. 531.)

Appellant concedes the right of respondents to build levees or embankments on his bank, of a reasonable height, also his right to build bulwarks, riprap or other obstructions on his own bank and immediately adjacent thereto, for the purpose of preventing the bank of the river on his side from being washed or wasted away; but we deny his right to extend these works into the current of a river, so as to change the current, and force it or any part of it on and against the appellant. (*Gulf etc. Co. v. Clark,* 101 Fed. 678, 41 C. C. A. 597; *Wholey v. Caldwell,* 108 Cal. 95, 49 Am. St. 64, 41 Pac. 31, 30 L. R. A. 820; *Paige v. Rockyford etc. Co.,* 83 Cal. 93, 21 Pac. 1102, 23 Pac. 875; 2 Farnham on Waters, 1634.)

"The riparian owner cannot justify the change of channel made by him even though necessary to protect his own interests." (*Mohr v. Gault,* 10 Wis. 513, 78 Am. Dec. 687; *Johnston v. Hyde,* 33 N. J. Eq. 632; 2 Farnham on Waters, 1636.)

"A riparian owner on the streams of this state takes to the thread of the stream, subject to an easement for the use of the public." (*Johnson v. Johnson,* 14 Ida. 561, 95 Pac. 499, 24 L. R. A., N. S., 1240; *Rudel v. Los Angeles,* 118 Cal. 281, 50 Pac. 400; 1 Farnham on Waters, 350.)

A riparian owner cannot erect structures to protect his own banks in such a way as to change the natural flow of the water and cast it upon his neighbor's land. (Farnham on Waters, 1725, and cases cited, note 11; *Parker v. Atchinson,* 58 Kan. 29, 48 Pac. 631.)

All of the evidence in this case shows that the appellant is in possession of the riparian lands claimed by him. However, for the purposes of this case, possession alone is a sufficient right. (*McDonald v. Bear River etc. Co.,* 13 Cal. 220, and cases cited; *Stein v. Burden,* 24 Ala. 130, 60 Am. Dec. 453; *Rathbone v. McConnell,* 20 Barb. (N. Y.) 311; 2 Farnham on Waters, 1667.)

Richards & Haga, for Respondents.

The testimony clearly shows, as shown by respondents' affidavits, that the levee and embankments of the appellant have changed the current of the Boise river upon and against the lands of the respondents, eroding and washing them away, with the crops growing thereon. But the appellant has cited no cases to the effect that the respondents have no right to defend against the acts of the appellant by erecting cribbing on their side of the stream to preserve and protect their lands and property. (*Wilhelm v. Burleyson,* 106 N. C. 389, 11 S. E. 590; *Blaine v. Brady,* 64 Md. 373, 1 Atl. 609; *Barnes v. Marshall,* 68 Cal. 571, 10 Pac. 115; *Gulf C. & S. F. Ry. Co. v. Clark,* 101 Fed. 680, 41 C. C. A. 597.)

The affidavit of William H. Ridenbaugh is not necessary to explain the deeds, but was introduced for the sole purpose of contradicting the specific descriptions in the instruments. "Private declarations of the grantor as to the boundary lines are not admissible to control the language of the deed." (Jones on Ev., 2d ed., sec. 485.)

"Parol evidence is not admissible . . . . to alter or vary the boundary stated or to substitute another and different boundary." (9 Ency. of Ev. 400; *Guilmartin v. Wood,* 76 Ala. 204; *Olson v. Keith,* 162 Mass. 485, 39 N. E. 410; *Shaffer v. Gaynor,* 117 N. C. 15, 23 S. E. 154; *Fuller v. Weaver,* 175 Pa. 182, 34 Atl. 634.)

The court below could do nothing else than apply the doctrine of balance of convenience and inconvenience in determining whether the restraining order should be modified. This doctrine is the principal guide upon which courts of equity determine the rights of litigants to an injunction. (High on Injunctions, sec. 13; 22 Cyc. 751–782, and cases cited.)

BUDGE, District Judge.—This was an action brought by the appellant against the respondent to secure a permanent injunction against the respondent from erecting certain dams, cribs and obstructions in the Boise river at a point opposite the south end of a certain bar which is described as beginning at a point about 150 feet northerly from the bridge of the Boise Valley Railway. The appellant in his complaint, among other things, charges that the defendant is erecting said dams, cribs and obstructions at a point opposite the south end of said bar, and connecting said bar with the west bank of said river with the intent, object and purpose of preventing the flow of the waters of the Boise river in, on and over the channel on the west side of said bar, and for the purpose of diverting said water and compelling the whole of the water flowing in said channel of the Boise river to flow on, to and against the east bank of said river and on, to and against the lands of the plaintiff, and causing said stream to be wholly diverted through one of its natural channels and causing the whole of said stream to be thrown against the east bank of said river and against and upon the lands owned by the appellant, and causing the banks of said river to erode and be washed away and inflicting upon the appellant great and irreparable damage and injury.

The erection by respondent of said dams, cribs and obstructions at the point alleged in the appellant's complaint is admitted by the respondent, who alleges in his answer that the appellant constructed and erected certain cribs and obstructions along the east bank of the said Boise river. It also appears from the pleadings that the respondent has constructed along the west bank of the said Boise river cribs and cribbing and obstructions.

The appellant and respondent are riparian owners of the lands abutting upon the said Boise river, and in order to protect their said lands each have constructed along the respective banks of the said Boise river at different points within the boundary lines of their said lands certain obstructions, cribs and cribbing for the purpose of preventing the waters from overflowing their respective holdings.

The respondent constructed at the point heretofore indicated a dam or cribbing from the west bank, on his land, in a northerly direction, connecting said cribbing, dam or obstruction with a certain small island, and thus diverted a part of the stream of said Boise river from one of its natural channels. It is contended by the appellant that the respondent should not be permitted to construct or maintain an embankment or breakwater from the bank of his land out into the said Boise river.

Upon the filing by appellant of his verified complaint in the district court of the third judicial district, the honorable judge of said court issued a temporary order restraining the respondent from further prosecuting his said work of the construction of certain cribs, dam or obstruction from the west bank of the said Boise river out into said stream and connecting the same with the island situated therein. Upon a hearing duly had subsequent to the issuance of said temporary restraining order, upon affidavits filed by the respective parties, the judge of said court modified the temporary restraining order theretofore issued, and permitted the respondent herein to complete said crib, dam or obstruction from the bank of said river abutting upon his lands out

into said stream for a distance of 105 feet. The appellant complains of the action of the court in thus modifying his said temporary order, and appeals from said judgment so made and entered and presents to this court the question, whether or not the trial court erred in modifying said temporary restraining order, thereby permitting the respondent herein to construct said crib, dam or obstruction from the bank adjoining his said land out into the said Boise river.

The question, therefore, presented is: "Has a riparian owner the right to place an obstruction from the banks of a stream abutting upon his lands out into said stream, and thereby change the course of said stream or a portion thereof, to the damage of a riparian owner upon the opposite side of said stream?"

In case of *Geurkink v. City of Petaluma*, 112 Cal. 306, 44 Pac. 570, the supreme court of California held:

"A city is liable for damages to property caused by its changing the course of a natural stream flowing within its limits so as to make it flow along a public street on which the property abuts, in such a manner as to prevent free access to it. A city will be enjoined from changing the course of a natural stream flowing within its limits so as to make it flow along a public street. . . . . "

In the case of *Fowler v. Wood*, 73 Kan. 511, 117 Am. St. 534, 85 Pac. 763, 6 L. R. A., N. S., 162 (quoting from a portion of the syllabus), the supreme court of Kansas lays down the following rule:

"An owner of land bounded by a navigable stream has the right to protect his soil against inroads of the water, . . . . but he has no right, by obstructions placed across the main current, to deflect the stream itself into a new channel."

We believe the rule to be that riparian owners of lands abutting upon a stream, whether navigable or non-navigable, have the right to place such barriers as will prevent their lands from being overflowed or damaged by the stream, and for the purpose of keeping the same within its natural channel, but we are of the opinion that a riparian owner of lands abutting upon a stream has no right to place obstructions

out into the stream for the purpose of changing the natural course of the river, or for any other purpose that would do damage to a riparian owner on the opposite side or to owners of land abutting upon said stream either above or below; and in this case we are of the opinion that the court erred in modifying the temporary restraining order issued in said cause upon the verified complaint of the appellant and in permitting the respondent herein to construct said crib, dam or obstruction out into the channel of said stream.

As heretofore stated, it is admitted by the pleadings that the appellant and respondent have constructed upon the banks of the said Boise river and within the boundaries of their respective lands cribbing for the purpose of protecting the same from overflow. The respondent contends that it became necessary for him to construct a crib, dam or obstruction from his lands abutting upon said river out into the channel thereof in order to protect his lands from serious damage by reason of the fact that the appellant had constructed upon the opposite side of the stream and along said stream at different points certain cribs or cribbing.

From the facts in this case, and applying the law as we understand it, to the facts, we do not believe that this question is material, or should, at this time, be considered in arriving at a conclusion in this case.

The rule heretofore announced would apply to appellant as well as to respondent, and in our opinion neither would have the right to construct cribs, dams or obstructions from their respective banks out into the said Boise river.

This brings us to the consideration of the second question involved in this appeal, namely, the right of the appellant to maintain this action.

It appears from the record that the appellant purchased the land that he was in possession of at the commencement of this action from one William Ridenbaugh et al.; that Ridenbaugh's grantors secured said lands from the government; that the meander line established by the government along the Boise river and bounding a portion of the lands of the appellant was a short distance from the thread of the stream of

the said Boise river and the established boundary line by metes and bounds of the appellant. That portion of the lands lying between the meander line so established along the said Boise river by the government and the thread of the stream was in the exclusive possession of the appellant's grantors and has been in the appellant's possession for a number of years.

In the case of *Johnson v. Johnson,* 14 Ida. 561, 95 Pac. 499, 24 L. R. A., N. S., 1240, the rule as there announced and followed in the case of *Lattig v. Scott,* 17 Ida. 506, 107 Pac. 47, by this court, is "that a riparian owner upon the streams of this state, both navigable and non-navigable, takes to the thread of the stream," and where it appears, as it does in this case, that the grantors of Ridenbaugh et al. became, by operation of law, vested with the title in fee to the land from the meander line as established by the government to the thread of the stream of the said Boise river, all of whom for many years prior to the conveyance of the land herein to the appellant were in the open, notorious, peaceable and exclusive possession of said land, and the appellant has subsequently been exclusively possessed thereof in the same manner as his grantors, in our opinion, in view of the facts as disclosed by the record in this case, his right to maintain this action cannot be questioned.

We therefore conclude that the district court erred in modifying the temporary order for the injunction granted in the first instance in this case. The judgment of the trial court is hereby reversed and the cause remanded for further proceedings in accordance with the views herein expressed. Costs are awarded against the respondent.

Ailshie, Presiding J., and Sullivan, J., concur.

(June 29, 1911.)

ON REHEARING.

[116 Pac. 414.]

(Syllabus by the court.)

1.  This court will not reverse an order of the trial court in granting or modifying a temporary injunction, unless it is shown to have been a clear abuse of the discretion vested in the trial court.

2.  Under the statutes of this state, secs. 4287 and 4288 (Rev. Codes), "an injunction is a writ or order requiring a person to refrain from a particular act," and the writ issues to restrain the commission or continuance of some act which would produce "great or irreparable injury" to the moving party. The chief virtue of the writ lies in its preventive nature.

3.  Injunction cannot be used as a retributive or offensive weapon. It is primarily an instrument of defense.

AILSHIE, Presiding J.—A rehearing was granted in this case in order that we might re-examine the questions involved and ascertain if the court had erred in the original opinion in the case.    Upon a reargument, it is urged that this court should not reverse an order of the trial court in granting or modifying a temporary injunction unless it is shown to have been a clear abuse of the discretion vested in the trial court. In support of this, counsel cite the following cases which, it must be conceded, sustain their position: *Staples v. Rossi,* 7 Ida. 618, 65 Pac. 67; *Shields v. Johnson,* 10 Ida. 454, 79 Pac. 394; *Wilson v. Eagleson,* 9 Ida. 17, 108 Am. St. 110, 71 Pac. 613; *Price v. Grice,* 10 Ida. 443, 79 Pac. 387.  We may safely accept the statement of counsel on this question as the correct rule of law to be followed in this state.

The next contention made by the respondents is stated as follows: "Nowhere does the appellant state that he *has been injured,* nor is there one word of testimony which was produced on the hearing that the plaintiff had been damaged to any extent whatever."  This statement is made the basis for the argument that since no injury had been inflicted at the time of the commencement of the action, the court would.

not issue a restraining order on the surmises and conjectures of the moving party against the intent or probable action of the adverse party. Counsel are partially correct and partially in error in their argument on this phase of the case. It has been well said by a very eminent court of this country that "courts of equity . . . . have power to issue injunctions, and that they never exercise this power to allay mere apprehensions of injury, but only when the injury is imminent and irreparable." (*Schubach v. McDonald,* 179 Mo. 163, 101 Am. St. 452, 78 S. W. 1020, 65 L. R. A. 136.) Under the statutes of this state, however (sec. 4287, Rev. Codes), "An injunction is a writ or order requiring a person to refrain from a particular act"; and by section 4288, the writ issues to restrain the commission or continuance of some act which would produce "great or irreparable injury" to the moving party. The chief virtue of this writ lies in its preventive nature. It is invoked for the purpose of restraining and preventing the execution of a threatened and imminent, unperformed and unexecuted act, and to avert a nonexistent injury. (22 Cyc. 741.) This is undoubtedly the kind and character of action in which the writ may properly be invoked. If the defendants were building a dam or cribbing into the bed of the Boise river in such a way as to deflect and throw the body of the stream on to the lands of the plaintiff, damage and injury could reasonably be expected to follow, although none had then occurred.

It is unnecessary for us to enter into a further discussion of the law dealing with the rights of riparian proprietors to either strengthen the embankments along the stream or build dams or structures into the bed of the stream. The law dealing with the right of a riparian proprietor to build retaining walls along the bank of the stream or strengthen the banks is very well settled. (See note to *Fowler v. Wood,* 73 Kan. 511, 117 Am. St. 534, 85 Pac. 763, 6 L. R. A., N. S., 162.) When, however, it comes to building dams or other embankments or structures into the bed of the stream so as to impede or interfere with the flow of the stream, the party who does so acts at his peril. A court of equity should never permit

such a thing to be done where there is a showing that it will in all reasonable probability result in "great or irreparable injury" to someone else.

In the case at bar, the order of the trial court in permitting the erection of this structure out into the bed of the stream or main channel is reconcilable with the law only upon the theory that the court had doubt or was uncertain as to whether or not this cribbing was being constructed in the channel or bed of the stream as it existed at the time of or immediately prior to the construction of this cribbing. Examination of the record and the affidavits in the case discloses some controversy over this particular question. We are not prepared to believe that the trial court, in modifying the original order of injunction so as to permit the construction of this cribbing by defendant into what has been designated as the channel of the stream, did so on the theory that the deflection of a part of the stream from the main channel was justifiable simply because the plaintiff had erected walls and barriers along his side of the stream which may have caused damage to the defendant. In other words, a wrong or injury committed by the plaintiff cannot justify a like wrong or injury by the defendant. Injunction cannot be used as a retributive or offensive weapon. It is primarily an instrument of defense.

This case has not yet been heard on its merits. It is pending here only on appeal from the order modifying an injunction *pendente lite*. We, therefore, refrain from entering into any further discussion of the merits of this controversy. In view of the fact that we are not finally disposing of the appeal until after the high-water period of the year has practically passed, and the further fact that this case will undoubtedly be tried on its merits before another season, we have concluded to allow the modified order of the trial court to stand until the case is finally tried on its merits. This is done, however, upon the theory and expectation that this case will be heard on its merits before the high-water period of another season comes, so that if it should be finally determined that this structure is in the channel of the stream and therefore un-

lawful, it may be removed before another high-water season. If, on the other hand, it should be found not to be an unlawful structure, there will be no occasion for its removal.

The order appealed from will be affirmed as above indicated. Each party will pay one-half the costs of the appeal.

Sullivan, J., concurs.