(June 12, 1913.)

## EUGENE FISCHER, Appellant, v. THOMAS J. DAVIS et al., Respondents.

[133 Pac. 910.]

APPELLATE PRACTICE AND PROCEDURE—PREPARATION OF TRANSCRIPT—
TRANSCRIPT OF REPORTER'S NOTES—TIME FOR EXTENDING NOTES—
JURISDICTION OF TRIAL JUDGE TO GRANT EXTENSIONS—RULE 77 OF
SUPREME COURT DIRECTORY ONLY—DUTY OF APPELLANT IN PROCUR-
ING TRANSCRIPT—LACHES—APPLICATION OF RULES 23 AND 25 OF
SUPREME COURT TO AMENDED APPELLATE PROCEDURE—RIPARIAN
OWNERSHIP—PROTECTION TO BANKS OF STREAM—OBSTRUCTIONS IN
STREAM—SHIFTING AND CHANGEABLE STREAMS—BREAKWATER, CRIB-
BING AND RIP-RAPPING ALONG STREAMS—INJUNCTION.

1. Under the provisions of subd. 1 of sec. 4434 of the Rev. Codes, as amended at the 1911 session of the legislature (1911 Sess. Laws, p. 379), an appellant who desires "a transcript of the testimony and proceedings . . . . shall first procure from the district judge an order directing the reporter to prepare said transcript or specified portion thereof, which order shall limit the time within which the reporter shall complete and lodge the same." In the event any further order for extension of time is necessary, the district judge has the jurisdiction and authority to grant such further time as may be required.

2. Under the amended and revised appellate practice and procedure, as adopted by the 1911 session of the legislature, the appellant has no control over the getting out of the transcript, either of the reporter's notes or of the judgment-roll and record in the case, except to file his *praecipe* for the record and pay the estimated fees therefor, until the transcript is delivered to him for service.

3. The amended and revised appellate practice and procedure, as adopted by the 1911 session of the legislature, leaves the preparation of the transcript of the reporter's notes and the record in the case to the court reporter and the clerk of the district court, and the duty of filing such record in the supreme court is imposed upon the clerk of the district court, and on failure by the reporter or the clerk to discharge this duty promptly and with diligence, either the district judge or the supreme court may issue orders and mandates to compel prompt and timely action on the part of these court officials.

4. A failure on the part of either the court reporter to prepare a transcript of his notes or on the part of the clerk of the district court to prepare and deliver a transcript or file the same in the supreme court cannot result in or work a dismissal of the appeal, unless the appellant has been guilty of laches and negligence, or has in some way contributed to or encouraged the delay and failure on the part of the proper officer to act.

5. *Held,* that under the provisions of sec. 4434 of the Rev. Codes, as amended by chap. 119 of the Session Laws of 1911 (1911 Sess. Laws, p. 379), it was the purpose and intent of the legislature to vest the jurisdiction and authority in the district judge to control the getting out of reporter's notes and to grant necessary extensions of time for the reporter to transcribe his notes and to make all orders in relation thereto.

6. Rule 77 of the rules of the supreme court, with reference to extensions of time within which to extend reporter's notes and the showing to be required by the district judge before granting such extensions, is directory and not mandatory, and a failure to comply therewith will not work a dismissal of an appeal where the appellant has been diligent in the prosecution of the appeal and has done everything required of him by statute to be done.

7. This court will require a strict compliance with all the provisions of the revised and amended appellate practice and procedure, as enacted by the 1911 session of the legislature, in so far as those provisions contemplate the speedy prosecution of appeals and the elimination of delays.

8. Under the amended and revised statutes prescribing the appellate practice and procedure, a reporter's transcript of the testimony, duly signed and certified by the judge of the district court, takes the place of a statement or bill of exceptions, and the time for filing a transcript on appeal as prescribed by Rules 23 and 25 of the supreme court is suspended during the time the reporter is preparing his notes and until the same is settled and allowed by the district judge.

9. As a general rule of law applicable to a river or stream of water with well-defined banks and a permanent channel or bed, a riparian owner of lands abutting on such stream has no right to place obstructions out into the stream or channel thereof for the purpose of changing the natural course of the stream or for any other purpose that would be injurious or damaging to the riparian owner on the opposite side thereof or to the owner of land abutting on the stream either above or below.

10. The general rule applicable to flowing streams of a permanent character and well-defined banks and channel or bed is subject to many exceptions in cases where a stream is vagrant and

constantly changing in its course and channel and flows through a level, sandy and gravelly formation, and is constantly filling in on one side and cutting out on the opposite side, thus damaging riparian proprietors.

11. A riparian proprietor has a right to build cribbing, stockades, or rip-rapping along the natural bank of the stream in order to protect the banks and the abutting lands.

12. The law will not permit one riparian proprietor to build structures in the channel or bed of the stream so as' to impede or interfere with the flow of the current or render it necessary for another riparian proprietor to build rip-rapping, cribbing, a breakwater, or other structure, in order to protect his land from washing or erosion caused by the additional burden and flow of water cast upon it by reason of the encroachments of such opposite riparian proprietor.

13. In dealing with streams of the nature and character of the Boise river where it flows through the Boise Valley, a court must take into consideration the natural conditions and the peculiarities of the stream and the country and formation through which it flows and its vagrant and changeable character, and also the fact that great reservoirs and lakes have been formed and prepared and are being prepared for the storage of the waste, surplus and overflow of this stream in the high-water period, and that in the near future there will be no high-water season in this stream where it flows through the Boise Valley.

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Charles P. McCarthy, Judge.

Action for permanent injunction. Judgment for the defendant and plaintiff appealed. *Affirmed.*

B. F. Neal, for Appellant.

We have been unable to find any construction of the acts of 1911 relating to appeals by this court which throws any considerable light on the questions raised on the respondents' motions to dismiss. However, similar circumstances to those in the case at bar have been construed by many of the courts, though none under identical statutes. (*Smith v. Jaccard,* 20 Cal. App. 280, 128 Pac. 1023; *Continental etc. Assn. v. Mills,* 44 Neb. 136, 62 N. W. 478; *Dist. of Columbia v. Roth,* 18 App. D. C. 547; *Baldwin v. Mitchell,* 86 Md. 379, 38 Atl.

775; *Cahill v. City of Baltimore,* 93 Md. 233, 48 Atl. 705; *State v. Estes,* 34 Or. 196, 51 Pac. 77, 52 Pac. 571, 55 Pac. 25; *Dean v. Oregon R. & N. Co.,* 38 Wash. 565, 80 Pac. 842; *First Nat. Bank v. Fowler,* 51 Wash. 638, 99 Pac. 1034; *United States v. Adams,* and *United States v. Johnson,* 6 Wall. 101, 18 L. ed. 792; *Cameron v. Calkins,* 43 Mich. 191, 5 N. W. 292.)

The reason for the rule announced in *Simpson v. Pioneer Irr. Dist.,* 17 Ida. 435, 106 Pac. 1, has ceased, and the reason for the rule being gone, the rule likewise must go. Especially must this be so where the statute provides all the machinery for carrying on all the proceedings relating to appeals, and merely gives the supreme court supervisory power over appeals, under Laws 1911, c. 117, sec. 4820–A, subsec. 4, p. 376, in formal matters, and requires that all such rules as are made by the supreme court shall be "not inconsistent with the spirit of this act."

The accustomed course of a stream which riparian owners are entitled to say must not be disturbed is not to be found in historical research, but is that which is its natural and apparently permanent course at the time when the right is called in question. (2 Farnham, Waters, p. 1636; also Wares, Roman Water Laws, sec. 21; *Larrabee v. Town of Cloverdale,* 131 Cal. 96, 63 Pac. 143.)

"Riparian proprietor is entitled to nominal damages for any disturbance of his right without proof of actual damages." (*Stein v. Burden,* 24 Ala. 130, 60 Am. Dec. 453.)

Damage is presumed from the diversion of a stream. (*Plumleigh v. Dawson,* 1 Gilm. (Ill.) 544, 41 Am. Dec. 199, and note; *Tillotson v. Smith,* 32 N. H. 90, 64 Am. Dec. 357; Angell, Watercourses, sec. 135; *Barnes v. Sabron,* 10 Nev. 217.)

Obstruction of running water is a wrong of exactly the same character as diversion, being an interference with the riparian owner's right to have the stream undisturbed in its quantity and manner of flow, and as a subject of injunction is governed by the same rules. (Pomeroy's Eq. Rem., sec. 563, and 26.)

The law implies a damage from the injury or violation of the right of the plaintiff. (*Parke v. Griswold,* 17 Conn. 288, 42 Am. Dec. 739; *Learned v. Castle,* 78 Cal. 454, 18 Pac. 872, 21 Pac. 11; *Allen v. Stowell,* 145 Cal. 666, 104 Am. St. 80, 79 Pac. 371, 68 L. R. A. 223; *City of Janesville v. Carpenter,* 77 Wis. 288, 20 Am. St. 123, 46 N. W. 128, 8 L. R. A. 808; *Moore v. Clear Lake Waterworks,* 68 Cal. 146, 8 Pac. 816, *Amsterdam Knitting Co. v. Dean,* 162 N. Y. 278, 56 N. E. 757.)

The trial court relied upon sec. 4904, Rev. Codes, and *Bemmerly v. Smith,* 136 Cal. 5, 68 Pac. 97, as authority for its right to tax the costs incurred in the respondents' law actions against appellant. Appellant, on the other hand, contended below that under the provisions of secs. 4901 and 4903, Rev. Codes, the court must tax the costs of the trial in so far as they grew out of respondents' cross-complaints against the respondents; in other words, to that extent must allow appellant's costs incurred on respondents' cross-complaint, and then use his discretion as to the question of costs on appellant's complaint. (*Penninger Lateral Co. v. Clark,* 22 Ida. 397, 126 Pac. 524.)

In every case the court will take into consideration all the circumstances and grant costs as justice seems to dictate. (5 Ency. Pl. & Pr. 184, 188; *Stewart v. McLaughlin,* 11 Colo. 458, 18 Pac. 619; Street's Fed. Eq. Prac., secs. 1994, 1996.)

Richards & Haga and McKeen F. Morrow, for Respondents.

Chapter 119, Laws of 1911, has been construed in a number of cases by this court, and in every case has been strictly applied. Subdivision 1 is mandatory, and as the district judge originally granted forty days and later purported to give an additional forty days, and the reporter's transcript was not lodged until thirty-five days after the expiration of this second period, this appeal should be dismissed. (*Kelley v. Clark,* 21 Ida. 231, 121 Pac. 95; *Grisinger v. Hubbard,* 21 Ida. 469, 122 Pac. 853; *Furey v. Taylor,* 22 Ida. 605, 127 Pac. 676; *Edwards v. Anderson,* 23 Ida. 508, 130 Pac. 1001; *Strand v. Crooked River Min. Co.,* 23 Ida. 577, 131 Pac. 5.)

Rules 23 and 25 of this court prescribe the time within which transcripts on appeal shall be filed in this court, and these rules have been held to be mandatory in the cases of *Buckingham & Hecht v. Reid,* 5 Ida. 312, 48 Pac. 1069, and *Taylor v. McCormick,* 8 Ida. 37, 66 Pac. 805.

The following authorities are cited as sustaining respondents' contention on this motion: *Kelley v. Pike,* 17 Or. 330, 20 Pac. 685; *Bell v. So. Pac. R. Co.,* 137 Cal. 77, 69 Pac. 692; *Taylor v. Colorado Iron Works,* 29 Colo. 372, 68 Pac. 218; *Smith v. Solomon,* 84 Cal. 538, 24 Pac. 286; *Brown v. Farmers' Loan & Trust Co.,* 109 Iowa, 440, 80 N. W. 525.

This court has held that in order to obtain a permanent injunction against an obstruction in a river channel, the plaintiff must show actual damage or a reasonable probability of actual damage. (*Fischer v. Davis,* 19 Ida. 493, 116 Pac. 412; *Boise Development Co. et al. v. Idaho Trust & Sav. Bank et al., ante,* p. 36, 133 Pac. 916.)

In addition to the cases which were approved by this court in the Boise Development Company case, *supra,* we wish to cite as sustaining the same view the following: *Bigelow v. Hartford Bridge Co.,* 14 Conn. 565, 36 Am. Dec. 502; *People v. Canal Board,* 55 N. Y. 390; *Thorn v. Sweeney,* 12 Nev. 251; *Crescent Min. Co. v. Silver King Min. Co.,* 17 Utah, 444, 70 Am. St. 810, 54 Pac. 244; *McGregor v. Mining Co.,* 14 Utah, 47, 60 Am. St. 883, 45 Pac. 1091; *Cleveland v. Martin,* 218 Ill. 73, 75 N. E. 772, 3 L. R. A., N. S., 629; *Bassett v. Salisbury Mfg. Co.,* 47 N. H. 426; *Thornton v. Grant,* 10 R. I. 477, 14 Am. Rep. 701; *Chicago Telephone Co. v. Northwestern Tel. Co.,* 199 Ill. 324, 65 N. E. 329; *Dunn v. Youmans,* 224 Ill. 34, 79 N. E. 321; *Rounsaville v. Kohlheim,* 68 Ga. 668, 45 Am. Rep. 505; *Lexington Bank v. Guynn,* 6 Bush (Ky.), 486; *City of Woodward v. Raynor,* 29 Okl. 493, 119 Pac. 964; *Goodwin v. New York N. H. & H. Ry. Co.,* 43 Conn. 494; *Hart v. Hilderbrandt,* 30 Ind. App. 415, 66 N. E. 173.

This court will not interfere with the findings of a trial court where there is any evidence to support them, and certainly not where there is a substantial conflict in the evidence, as in the case at bar. (*Robertson v. Moore,* 10 Ida. 116, 77

Pac. 218; *Mellen v. Great Western Beet Sugar Co.,* 21 Ida. 353, Ann. Cas. 1913D, 621, 122 Pac. 30; *Weeter Lumber Co. v. Fales,* 20 Ida. 255, Ann. Cas. 1913A, 403, 118 Pac. 289; *Tomsche v. Hummel,* 18 Ida. 23, 108 Pac. 343; *McCallum v. McClarren,* 15 Ida. 374, 98 Pac. 200.)

The cross-complaint of respondent was essentially an action of an equitable nature, and this court will not interfere with the order of the trial court in refusing to retax costs on appellant's motion. (Secs. 4901, 4903, 4904, Rev. Codes; *Bemmerley v. Smith,* 136 Cal. 5, 68 Pac. 97; *Abram v. Stuart,* 96 Cal. 235, 31 Pac. 44; *Gray v. Dougherty,* 25 Cal. 266.)

AILSHIE, C. J.—The respondent moved to dismiss the appeal in this case upon the following grounds: "(1) Because the reporter's transcript was not completed and lodged within the time prescribed by subd. 1 of sec. 4434, added to the Revised Codes by Laws of 1911, page 379, an express mandatory statute; (2) Because the trial court purported to grant an extension of time in contravention of Rule 77, and appellant wholly failed to complete his transcript within the time allowed by that rule; (3) Because the trial judge had no jurisdiction to settle the transcript under the facts of this case; and (4) Because the transcript on appeal was not filed within sixty days from the perfecting of the appeal, and no extension of time was asked for or obtained."

It appears that the judgment was entered in this case on the 4th day of April, 1912, and the appeal was perfected on the first day of June, 1912, by filing notice and an undertaking on appeal. On the same day, that is, June 1, 1912, the district judge made and filed an order allowing forty days for the preparation of the reporter's transcript of the evidence. Thereafter, and on July 9, 1912, the judge signed an order granting an additional period of forty days for the preparation of the reporter's transcript. This latter order was made on the application of counsel for appellant and the order was made without serving or filing any affidavit or showing as required and provided for in Rule 77 of the rules of this court. The latter order gave the reporter until the

20th day of August, 1912, to prepare and lodge a transcript of his notes. The reporter's transcript, however, was not, as a matter of fact, completed and lodged until September 24th, on which date it was served upon counsel for respondent. Counsel for respondent appeared before the trial judge at the time of the settlement of this transcript and made objections, on the ground that the court was without jurisdiction to settle and allow the same.

This motion involves a construction of sec. 4434 of the Rev. Codes, as amended by chapter 119 of the Session Laws of 1911 (1911 Sess. Laws, p. 379) and Rule 77 of this court. It is conceded in the outset that there was no compliance with Rule 77. That rule provides as follows:

Rule 77: ''In no case shall the time granted for the preparation of the transcript of the reporter's notes, under the provisions of sec. 4434, as enacted by the 1911 Session of the legislature, exceed forty days, including any and all extensions granted for the purposes therein specified; Provided, That in extraordinary cases, or in case of an unusually large record, or in case of sickness of the reporter, a party desiring an extension of time, may, upon filing affidavits showing the cause for the same and serving the same on the adverse party and giving notice of the time and place of hearing, which shall be not less than two days, and upon such hearing and good cause appearing, be granted an extension or extensions, not exceeding in the whole an additional forty days.''

In the last analysis, this motion rests on the validity and authority of the foregoing rule adopted by this court, and whether or not that rule is in harmony with the statute and is binding and operative. The appellant complied with the first part of the rule, in that he procured an order directing the reporter to prepare the transcript and fixing the time for that purpose, not exceeding forty days. There was, however, no attempt to comply with the *proviso* to that rule, namely, that additional extensions should not exceed forty days, and that these additional extensions beyond the first forty days should be made upon affidavit and notice. The statute, subd.

1 of sec. 4434, as amended, provides that the appellant who desires "a transcript of the testimony and proceedings . . . . shall first procure from the district judge an order directing the reporter to prepare said transcript or specified portion thereof, which order shall limit the time within which the reporter shall complete and lodge the same. . . . . It shall be the duty of the reporter, upon service of said copy of order and receipt of his estimated fees, to forthwith prepare said transcript and to complete the same and lodge the original and copies with the clerk of the district court within the time allowed by said order, or within such further time as the district judge may, by order, allow." It will be observed from the foregoing quotation that no limitation as to time is placed upon the district judge in allowing time to the reporter in which to prepare the transcript. Neither is any limitation placed upon the district judge as to "such further time as the district judge may by order allow." It would seem, therefore, that the legislature has left the matter of time of getting out transcripts entirely to the supervision and control of the district judge, and that in this matter he is given that same legal discretion which he has in any other matters submitted to his judgment and discretion as a judge. The spirit of this statute evidently contemplates that the district judge will exercise the power and authority vested in him in the light of the necessities therefor—the principal and chief consideration being the amount of time actually necessary to enable the reporter to prepare the transcript without giving the particular case undue preference over other work of equal rank or which may be prior in point of time and entitled to prior consideration. This statute evidently contemplates that the reporter, being the appointee of the district judge, and subject to discharge by him at any time, is subject to the orders and directions of the judge, and that the judge will best know the condition of the business and the amount of work that his reporter is doing, and will be in a position to know whether an extension of time is necessary, and if so, the probable length of time requisite to do the particular work required.

Sec. 4434 and secs. 4440, 4441, 4442, 4818 and 4820A, being the 1911 revisions and amendments of the appellate practice and procedure, were intended to both cheapen and expedite appeals, and one of the chief results of this revision and amendment has been in a large measure to transfer the duty and responsibility of preparing appeals from the attorneys who are prosecuting them to the court officers, and since these statutes have become operative this court has been repeatedly confronted with the question as to where the responsibility rested for the delay in the prosecution of an appeal and the accomplishment of the purpose of the legislature to secure quick and speedy determination of appeals from district courts.

It will be seen that the appellant must file a *praecipe* for the record and transcript or such part thereof as he may desire, and pay the fees demanded. If he desires the reporter's notes extended, he must "procure from the district judge an order directing the reporter to prepare such transcript or specified portion thereof, which order shall limit the time within which the reporter shall complete and lodge the same." The statute makes no further requirement of the appellant or his attorney until after he has been furnished with the copies of the transcript. He must then within five days specify and designate any errors or omissions and corrections necessary to be made and serve a copy on the adverse party or his attorney. The statute does not impose any duty upon the appellant or his attorney in the matter of procuring further extensions of time within which the reporter may complete the transcript of his notes. The matter seems to rest in the hands of the district judge, and it would appear to be the duty of the reporter to make the application himself directly to the district judge or to notify the attorney for appellant and request him to make the necessary application and give him the information on which to base such application. If, however, the reporter fails to notify the attorney for appellant that he will not be able to complete the transcript within the time originally allowed, there is no way for the appellant or his counsel to know that it will not be com-

pleted until after the time has expired, unless he hunts up the reporter and ascertains that fact. It is a well-settled rule of law that litigants or parties dealing with public officers are not chargeable with the delays, mistakes, negligence or inaction of such officers, and that they cannot be deprived of any legal right by the negligence, delay or refusal to act on the part of such officers, provided they do the things required to be done by them personally. (*Cameron v. Calkins,* 43 Mich. 191, 5 N. W. 292; *State v. Estes,* 34 Or. 196, 51 Pac. 77, 52 Pac. 571, 55 Pac. 25; *Dean v. Oregon R. & N. Co.,* 38 Wash. 565, 80 Pac. 842; *Stewart v. Raper,* 85 Neb. 816, 124 N. W. 472.)

In the case at bar, it appears that counsel for appellant did everything required to be done by him, and that he was diligent and was constantly after the reporter, urging him to get his work out. It does not appear that the work could have been completed sooner without delaying other work which was equally entitled to attention and consideration. The reporter should have procured an order giving him an extension of time necessary to complete this transcript. The failure, however, to do so should not be visited upon the appellant in a case where he shows that he was diligent and continually urging the completion of his work. (*Smith v. Jaccard,* 20 Cal. App. 280, 128 Pac. 1023.) The only remedy an appellant has where the reporter fails to get a transcript out in due time is to apply to the district judge for an order or writ of mandate. This might be done merely by motion, as the matter is pending before the court and the reporter is a court officer.

It follows from what has already been said that Rule 77 of this court is directory and advisory only, and not mandatory, and that an appeal cannot be, and will not be, in every instance, dismissed for a failure to comply with this rule. In other words, a failure to observe the requirements of Rule 77 with reference to extension of time for preparing reporter's transcript and the showing that should be made before granting such extensions can only become a cause or ground for dismissing an appeal in cases where the appellant or his counsel has neglected some duty imposed upon him, or has

been guilty of laches in neglecting to call any unreasonable delays to the attention of the trial judge or the reporter who is charged with the duty of preparing the transcript of his notes or the clerk of the court who is making up the final transcript for the supreme court. Rule 77 will be taken, however, as a standard and measure of diligence in determining when parties are guilty of such laches as will justify the dismissal of an appeal. This court shall in all respects insist upon the prosecution of appeals with diligence and dispatch. This court has in several cases indicated its purpose to require a compliance with the provisions of the 1911 amendments and revision of the appellate practice and procedure. (See *Kelley v. Clark,* 21 Ida. 231, 121 Pac. 95; *Grisinger v. Hubbard,* 21 Ida. 469, 122 Pac. 853; *Furey v. Taylor,* 22 Ida. 605, 127 Pac. 676; *Edwards v. Anderson,* 23 Ida. 508, 130 Pac. 1001; *Strand v. Crooked River Min. Co.,* 23 Ida. 577, 131 Pac. 5.)

What has already been said is applicable to the contention made by respondent that the transcript was not filed in this court within sixty days after the appeal was perfected as required by Rules 23 and 25 of this court. Under the amended statutes as above cited, the appellant is no longer chargeable with the duty of filing the record in this court. That duty has been transferred to the clerk of the district court (subd. 3 of sec. 4820a, 1911 Sess. Laws, 375), and the necessary fees for that purpose are paid by appellant to the clerk of the district court at the time he files his *praecipe* for the transcript. (Subd. 1, sec. 4820a, 1911 Sess. Laws, 375.) A failure on the part of the clerk of the district court to discharge this duty with diligence and dispatch may be reached by the appellant on application either to the judge of the district court or to this court. If, however, the judge of the district court grants extensions of time for the reporter to get out his transcript beyond the sixty-day period, it will be impossible for the clerk to send the transcript to this court within that time. We think, however, that the proviso found in Rule 25 of this court, "That the time during which the trial court, or judge thereof, may hold a bill of exceptions,

or statement, prior to the settlement and filing thereof, and the time during which the attorney for the respondent may retain the transcript on appeal before certifying, or refusing to certify the same, shall be excluded in computing the time, either under this rule or under Rule 23, within which the transcript on appeal shall be filed,'' applies to the settlement and allowance of the reporter's transcript of the evidence. The statute (sec. 4434, 1911 Sess. Laws, 379), provides that a transcript of the reporter's notes duly settled and allowed shall take the place of a statement or bill of exceptions as the same was required under the statute before amendment.

For the foregoing reasons, the motion to dismiss the appeal is denied.

This brings us to a consideration of the case on its merits. The action was brought to procure an injunction restraining the defendants from maintaining a cribbing or obstruction in the Boise river. A temporary injunction was issued and an appeal was taken to this court, and the judgment of the lower court was affirmed. (*Fischer v. Davis,* 19 Ida. 493, 116 Pac. 412.) The case was subsequently tried on the merits and this appeal is from the judgment. The plaintiffs and defendants are opposite riparian proprietors along the Boise river. The defendants filed a cross-complaint charging the plaintiff with maintaining an obstruction along the stream on his side, which they alleged caused an unusual volume of water to flow across and on to the defendant's lands, and erode and wash away the land and do great damage to the defendants as riparian proprietors. The court heard the case and denied any relief to either party, holding that neither obstruction was a damage or injury to the opposite land owner. The material findings made by the trial court are Nos. 4, 5, 6 and 7, and are as follows:

"4. That the said defendants in the spring of 1910 constructed a certain cribbing on the westerly side of such river at a point opposite the southerly end of a certain gravel bar situate in such river, for the purpose of protecting the said lands of defendants from erosion and being washed away during high water period in such river. That said river at

the point of said cribbing is about 362 feet wide; that said cribbing extends into the channel of said river a distance of about 74 feet, and at an angle of about 45 degrees to said channel.

"5. That the construction and maintenance of such cribbing does not and will not injure the lands of plaintiff.

"6. That during the years 1908 and 1909 the plaintiff constructed on the lands of plaintiff an embankment adjacent to such river and along the easterly side thereof for the purpose of protecting the said lands of plaintiff from erosion and being washed away during high-water periods in such river.

"7. That the erection and maintenance of such embankment by plaintiff does not and will not injure the lands of the said defendants."

It is well settled, as a general rule, that "A riparian owner of lands abutting upon a stream has no right to place obstructions out into the stream for the purpose of changing the natural course of the river, or for any other purpose that would do damage to a riparian owner on the opposite side, or to owners of land abutting upon said stream, either above or below." (*Fischer v. Davis,* 19 Ida. 493, 116 Pac. 412.) This is particularly true with reference to streams that have well-defined banks and a permanent channel or bed. The Boise river, however, is not such a stream. While it carries a considerable volume of water, especially during the high-water season, still it is a vagrant stream with low banks where it traverses the valley and is constantly changing its channel in flowing through and over a sandy and gravelly formation. This stream was meandered when the government survey of public lands was made, and yet it appears that in many places no part of the stream is now within the boundary lines of the river as meandered at the time of the survey. In some instances, it is as much as a half mile away. In order for those who are using their land along the stream to be able to improve the same with any assurance of obtaining results or any degree of safety, it is necessary to protect the banks from erosion either by means of cribbing, rip-rap, or stock-

ades.  The appellant, in an effort to protect his lands, pursued the course of rip-rapping the banks along the stream on his side and followed the natural course of the bank in all its curves and angles.  The respondents, on the other hand, in order to protect their lands on the opposite side built cribbing from a projecting point in almost a right line with the general course of the stream, but at that particular point where the cribbing extended into the channel of the stream it was at an angle of about 45 degrees to the channel as it curved toward respondents' land.  The evidence shows that this structure did not tend to throw the water on to appellant's lands, but rather to turn the water in the direct general course of the stream and prevent its cutting out the banks on respondents' side of the stream.  The trial court finds that this cribbing would in no way injure or damage the opposite land owner, and for that reason concludes that he is not entitled to a permanent injunction.  The evidence supports this finding.  A stream of this kind and character must be dealt with differently from the ordinary river with a fixed and permanent bed and well-defined banks and channel, and the courts must take the physical facts and conditions into consideration in rendering decisions with reference thereto.

Another thing which the court will take into consideration in entering judgments with reference to this stream is that large reservoirs have been constructed by the government reclamation service for impounding water from this stream during the high-water season, and that another large reservoir is being constructed some 23 miles above Boise City, which it is estimated will collect the entire surplus flow of the Boise river during the high-water period.  When these projects are completed, there will no longer be any particularly high-water season in the Boise river below the points of diversion, and for that reason it would hardly seem necessary for a court to cause these cribbings, embankments and stockades to be removed which are so placed that they do not cause damage to other riparian proprietors and where they will not in all probability cause injury or damage in the future.

It must also be taken into consideration in this case that this is an application for a permanent mandatory injunction, and the contest is waged between two opposite riparian proprietors. No question arises here as to the interest of any other person or riparian proprietor. In this case both parties have already constructed their works in order to protect the banks against the erosion and washing by the waters of the stream, and so any additional velocity that may be given this stream at this particular point by reason of the structure on one side is equally guarded against by a like or similar structure on the opposite side. In other words, the structure erected by one of these parties does not force or compel the other party to erect a like or similar structure for the protection of his land. In this case the work has been done on both sides of the stream for the protection of each riparian proprietor, and the trial court finds that the channel of the stream is left sufficiently wide to carry the entire volume of water that is ever likely to flow in that stream, and the evidence abundantly supports this finding. The law will not permit one riparian proprietor to build structures into the channel or bed of a stream so as to impede or interfere with the flow of the current or to render it necessary for another riparian proprietor to build cribbing, a breakwater or other structure in order to protect his land from washing or erosion caused by the additional burden cast upon it by reason of the encroachments of the other riparian proprietor. (*Fischer v. Davis,* 19 Ida. 493, 116 Pac. 412; *Fowler v. Wood,* 73 Kan. 511, 117 Am. St. 534, 85 Pac. 763, 6 L. R. A., N. S., 162; *Guerkink v. City of Petaluma,* 112 Cal. 306, 44 Pac. 570.)

As said by this court on rehearing in *Fischer v. Davis, supra,* "A court of equity should never permit such a thing to be done where there is a showing that in all reasonable probability it will result in 'great or irreparable injury' to someone else."

Upon the whole record in this case, we are satisfied the appellant is not entitled to the injunctive relief sought and

that the trial court properly dismissed the case. The judgment will be affirmed, and it is so ordered. Costs are awarded to respondents.

Sullivan and Stewart, JJ., concur.

### ON PETITION FOR REHEARING.

#### (July 5, 1913.)

AILSHIE, C. J.—A petition for a rehearing has been filed in this case, in which counsel discuss the main proposition considered and disposed of in the original opinion.

We find no reason to change or alter the views heretofore expressed by the court upon these questions. Our attention, however, has been called to one matter which should have been considered by the original opinion and which was evidently overlooked. The appellant brought to the attention of this court the action of the trial court in denying and overruling his motion to retax the costs in the case, and appellant has assigned that action of the court as erroneous. The appellant commenced his action against respondents to procure an injunction restraining respondents from maintaining a cribbing or breakwater in the river. Respondents answered, traversing the principal allegations of the complaint, and also filed a cross-complaint alleging that appellant was maintaining an obstruction on his side of the stream which was causing damage to the defendants, and prayed for an injunction restraining the plaintiff from continuing to maintain this obstruction, and also alleged that defendants had sustained $11,000 damages and prayed judgment against him for that sum. All these questions were tried, and the trial court, after hearing all the evidence, concluded that neither party was injured nor damaged by the other, and that neither could recover damage from the other nor have an injunction. Notwithstanding this conclusion, the trial court taxed all the costs of the case up against the plaintiff, who is appellant here. This, we are satisfied, was erroneous. Under the facts

of this case, each party ought to have been required to pay his own costs.

We think the fair construction of secs. 4901 and 4903, Rev. Codes, requires the taxing of costs incurred by each party up against the party who incurred such costs in a case like the one under consideration. We do not understand either *Bemmerly v. Smith,* 136 Cal. 5, 68 Pac. 97, or *Abram v. Stuart,* 96 Cal. 235, 31 Pac. 44, as opposed to this construction and holding.

Counsel has also suggested that the appellant should have the right to maintain an action against respondents for the purpose of recovering compensation for any damages incurred since the trial of this case by reason of the erection and maintenance of the cribbing which was the subject of appellant's action in this case. That question is not involved in this case, and of course cannot properly be discussed or considered.

It would seem clear, however, that the judgment in this action is no bar to the appellant's right of action against respondents for any damage which he may have sustained since the trial of the present case if he is able to establish that he has sustained damages. We conclude, therefore, that the judgment in this case must be modified to the extent above suggested. The cause will therefore be remanded to the district court, with direction to tax the costs incurred by each party against the party who incurred the same, and if any item of costs has been incurred alike by both parties, that such expenditure be divided equally between the parties.

Costs of this appeal will be equally divided between appellant and respondents.

Sullivan and Stewart, JJ., concur.