## LEWIS C. HOPKINS *et al.*

### *v.*

## THE ROSECLARE LEAD COMPANY.

1. PARTIES—*in chancery—generally.* It is a rule of equity pleading, that all persons having an interest in the subject matter of a suit in equity, which may be injuriously affected by its determination, are necessary, and must be made parties.

2. Where the answer of a defendant to a bill in equity discloses the fact that there are other parties claiming, as his assignees, the interest sought to be affected by the suit, and whose rights will be so affected by the decree sought, if rendered, as to drive them to their bill in equity to protect their rights, the complainant should obtain leave to amend his bill, and make such persons parties defendant.

3. SAME — *person having interest in subject matter of suit, not bound to become defendant on his own motion.* Whilst there are cases in which persons who have an interest may, by petition, become parties defendant, on leave of the court, yet they are not concluded by the decree of the court if they fail to thus become parties.

4. SAME — *effect of want of proper parties.* It is the duty of a complainant to see and know that he has before the court all necessary parties, or his decree will not be binding, and it is the policy of the law to prevent a multiplicity of suits; and where a complainant takes a decree without making the necessary parties defendants to his bill, when the necessity of their being made parties is disclosed to him by the answer of those who are made parties and by the evidence in the case, the decree will be reversed.

5. CORPORATION—*through what agencies it must act.* A corporation can only act through its officers, or by expressly delegating its power to others. A stockholder, even though he may own a majority of the stock, can not, as such, sell the property of the corporation.

APPEAL from the Circuit Court of Hardin county; the Hon. DAVID J. BAKER, Judge, presiding.

Mr. WESLEY SLOAN, for the appellants.

Mr. JAMES M. WARREN, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

In the year 1850, William Pell leased to Neir Valle certain lands in sec. 32, town. 12 south, range 8 east, in Hardin county,

for the period of fifty years. The lands were supposed to contain minerals. Valle, with others whom he had associated with him, sunk a number of shafts and ran various tunnels, at a large expense, and had taken out a large amount of lead ore, and proved the land to be valuable for the mineral it contained. The lease still continued in force in 1864, when Valle transferred the lease to Anthony LaGrave, who transferred it to the Roseclare Lead Company, appellee.

In the spring of the year 1864, the company entered upon the land with a large amount of machinery, went to work, but some months afterwards it was discovered that there was a mistake in the description of the land in the lease. It was described as being in township 13, when it was, in fact, in township 12; thereupon the owners of the fee brought ejectment to recover the land. On a trial they recovered a judgment. The defendant paid the costs, and took a new trial under the statute.

The company thereupon filed a bill in equity to correct the mistake, and to enjoin further proceedings in the ejectment suit until a hearing should be had on the bill. At the first term after the bill was exhibited, a demurrer was filed, which was sustained, and the relief sought was refused. Thereupon another judgment of recovery was had in the ejectment suit. The complainants in the bill removed that case to the Supreme Court, where, on a trial, the decree of the court below, refusing the relief asked in the bill, was reversed and the cause remanded. Thereupon complainants filed a supplemental bill, praying a restitution of the possession of the premises.

Afterwards, on the 15th day of January, 1872, LaGrave, a large stockholder in the company, executed instruments in writing, transferring the lease on the lands upon which the company claim they were operating their mining franchises, to one Lewis C. Hopkins, and delivered the lease to him, and sold and gave to him the right to control the suit then pending, in which the validity of the lease was involved, and an agreement was executed by the respective attorneys of the parties to dis-

miss the suit, and that the relief sought by the cross-bill might be granted.

On the next day another instrument was executed, by which LaGrave agreed to convey to Hopkins a 20 and a 40-acre tract of land, supposed to contain mineral. The agreement states, that Hopkins was to pay therefor $21,775, within thirty days after LaGrave should prepare proper deeds therefor. The deeds were prepared, but Hopkins' attorney refusing to advise that the title was good, he refused to receive them and pay the money under the agreement.

It is contended by the company, that these two agreements, although bearing different dates, constitute but one indivisible contract, and that they can not be separated; that the payment of $25,000 was indispensable to the passing of title to any portion of the matters contracted to be sold. On the other hand, it is claimed that the two agreements related to separate and distinct matters, and were entirely disconnected from each other, and were not intended to be nor were they in anywise connected with each other; that each agreement was independent of the other, and that when the $3225 was paid, and the agreement and other papers were executed and delivered on the 15th of January, that transaction was closed and entirely consummated; and that a failure to pay the money on the purchase of the land in nowise affected the title to the lease, or any benefit that might accrue to Hopkins by having the right to control and have any benefit resulting from the suit.

It is charged in the bill, that the statement in the contract "that the true consideration for the 20 and 40 acres of land is $21,775," was inserted without being noticed by LaGrave, and was intended as a cheat and a fraud on him, expressing what was never intended by LaGrave, and which was wholly foreign to the contract.

It is likewise alleged, that LaGrave was overreached by Hopkins, who represented himself as being wealthy and able to pay the balance of the money on the land, and also that it was of great importance to him that he should have the control of the suit on that day, thereby inducing LaGrave to surrender

the leases and make the transfers. It is also charged, that it was the purpose of Hopkins to get the suit out of the way, and not to acquire title to the land; that Hopkins was in embarrassed circumstances, and a suit against him at law would have been of doubtful result. The bill further charges, that LaGrave had no authority whatever to sell the lease, or to give the control of the suit to Hopkins or any other person, but only had the leases in his possession to enable him to prosecute the suit. There seems to be no question that the transfer of the lease to the company was not recorded when these several transactions occurred.

In an amended answer, Hopkins alleges that, on the 1st day of March, 1872, by agreement in writing, he sold to Hugh McBirney, and a number of others, 175 shares of the Roseclare Lead and Spar Mining Company, and other mining stocks in companies being operated in Hardin county; that he transferred to McBirney and the others all of his interest in the lease purchased of LaGrave, and all of his rights in the suit then pending, involving the validity of the lease, and for the correction of the description of the lands embraced in the lease; that the consideration for such transfer was $40,000, all of which had been paid to him in cash; and that McBirney, and those associated with him, knew nothing of any difficulty or trouble growing out of the non-payment of the $21,775, or that LaGrave imputed any fraud to Hopkins in the transaction. The bill in this case was filed on the 25th day of April, 1872, after the purchase by McBirney and the others.

We are unable to discover, from this record, the precise nature of the suit that was pending, or the cross-bill to which reference is made in the various agreements. The bill simply recites that a bill was pending, in which the company was complainant and John T. Madden and others were defendants, but we assume that it was to correct the mistake in the lease.

On a hearing in the court below, the relief prayed was granted, and the court decreed that the parties be restrained from using the agreement to dismiss the suit for that or any other purpose, and the agreements to sell the suit and the two

tracts of land, and the assignment of the lease, be surrendered up to be canceled, as fraudulent and void, and that the original leases be delivered to the company—from which defendants appeal to this court, and ask a reversal.

It is first urged by appellants, that the suit is defective for the want of necessary parties. It appears, from the amended answer of Hopkins, and evidence in the case uncontradicted, that Hopkins had transferred his 175 shares of stock in the company, together with the assignment of the lease and the written agreement that he might control the suit, to Hugh Mc-Birney and a number of others, before this suit was brought. And the uncontradicted evidence in the case shows that they purchased in good faith, and without notice that it was claimed by LaGrave or the company that Hopkins had perpetrated a fraud on LaGrave. Holding the lease and the authority to dismiss the suit when this controversy arose, their interest in the result of this suit is directly affected. If the suit referred to was to correct the lease, then the validity of their 175 shares of stock depends upon the result of that suit. So, we see, in any event, those persons have a direct interest in the event of this suit.

If the title they acquired to the lease from Pell to Valle is valid, then appellee has no title to the lease or right to exercise its franchises on the lands embraced in the lease; and if this proceeding is to have the effect which the decree purports to give, then, without being heard, appellant's rights are cut off, and the lease is vested in the company. Although such would not be the effect of the decree, still, it would drive them to their bill in equity to be able to assert their rights. It is a rule of equity pleading so elementary, and so frequently announced by this court, that all persons having an interest in the subject matter of a suit in equity, which may be injuriously affected by its determination, are necessary, and must be made parties, that we deem it supererogation to refer to authorities or to discuss the reason of the rule.

Complainants should, therefore, have obtained leave to amend their bill, and have made McBirney and the other assignees of

Hopkins parties defendant, when their interest was disclosed by his answer. It is, however, urged, that the notice to the attorneys of Hopkins, served and filed the fifth day of March, 1872, should be treated as notice to them. Their purchase was then complete, and had been for several days, and the pendency of the original suit was no notice to them, as it in nowise related to the transactions out of which their rights have grown. The notice to the attorneys did not affect them, as the relation of attorney and client is not shown. If they examined the files in that case when they purchased, they there found that Hopkins had the right to control the suit, and this suit was not instituted until the 25th of April following the purchase. Hence, we can infer no constructive notice that should charge them at the time they purchased.

It is urged that they had notice before they paid all of the purchase money, or, rather, were chargeable with notice by the bringing of this suit or the notice to the attorneys filed in the case. Whether this is true does not appear from the evidence. It seems that a portion of the $40,000 was paid in hand, and the balance on short time—how short does not appear from the evidence. Even if it was paid afterwards, we will not say, until they have an opportunity to be heard, that they did not acquire title unless they had actual notice, or its equivalent.

Whilst there are cases in which persons have an interest, and may, by petition, become parties defendant on leave of the court, yet we are aware of no case which holds that they must thus become parties or be concluded by the decree. To so hold would, in many cases, work great injustice, as persons living in another State or distant from the court would rarely have knowledge of the institution of the suit. In such cases, parties thus situated would be liable to have their most important interests seriously affected, without the opportunity of being heard in their defense. It is the duty of complainant to see and know that he has before the court all necessary parties, or his decree will not be binding. It is the policy of the law to prevent a multiplicity of suits, and where the rights of all persons may be settled in one proceeding, the parties should not be harassed by other proceedings.

It is insisted that LaGrave had no power to make the sale of the leases, to transfer the control of the suit, or to sell the 20 acres of land, as they were all owned by the company. He was but a stockholder, and as such had no power to make the sale. He, although owning the majority of the stock, could not act for the company, unless specially authorized. He could, no doubt, control the action of the company by the election of its officers, but still the company could only act through its officers or by expressly delegating power to others, whether a stockholder or other persons. In this case, LaGrave is not shown to have been empowered to make these sales; and whether his acts were ratified by the company so as to bind it, it would not be proper for us to discuss and determine until the parties in interest have had an opportunity to be heard in defense of their rights, and hence we shall not now determine that question. The questions of whether Hopkins was guilty of fraud in procuring the several agreements, and whether Mc-Birney and his associates were chargeable with notice, are questions that will arise when they shall be made parties.

We gather from the record in this case, that LaGrave was the apparent owner of the lease when he transferred it to Hopkins; that although he had transferred it to the company, he had, perhaps, never delivered it, or if he had it had never been recorded. If this was the case, and Hopkins was not chargeable with notice, and McBirney and his associates were *bona fide* purchasers, then there is no reason perceived why they are not the legal owners of the lease, and why they do not have the legal and equitable right to prosecute the suit to have the lease corrected, to enable them to render the lease available. But on this branch of the case there seems to be a dearth of evidence, and even if it were fuller, the question should not be determined until McBirney and his associates are before the court.

But for the want of proper parties defendant, the decree of the court below must be reversed and the cause remanded, with leave to amend the bill, and for further proceedings.

*Decree reversed.*