(July 1, 1921.)

## H. L. MOODY, Respondent, v. FOSTER CRANE, Appellant.

[199 Pac. 652.]

APPEAL AND ERROR—REPORTER'S TRANSCRIPT—EXTENSION OF TIME TO PREPARE SAME—DUTY OF REPORTER—WHEN EQUITY WILL NOT DECREE SPECIFIC PERFORMANCE — IF PROPER PARTIES ARE NOT BEFORE COURT—WHERE DECREE CANNOT BE ENFORCED BY ORDINARY PROCESS OR WHEN CONTRACT LACKS MUTUALITY.

1. A reporter's transcript prepared under C. S., sec. 6886, will not be stricken from the record on appeal because it was not prepared, lodged, served and settled within the time allowed, where appellant has obtained and served the proper order and paid the fees, and the delay is not due to any negligence on his part.

2. Under C. S., sec. 6886, it is the duty of the court reporter, where he has been unable to prepare a transcript within the time allowed by the trial court's order, to have such time extended before its expiration, but his failure to do so will not be sufficient reason for striking such transcript from the record on appeal, where appellant has not contributed to such delay.

3. A court of chancery will not enter a decree of specific performance unless all of the proper parties are before the court.

4. Equity is without jurisdiction to decree specific performance of an executory contract where by the ordinary processes of the court it cannot be enforced.

5. Equity will not decree specific performance of a contract unless there is mutuality of obligation and remedy, and where a contract cannot be enforced against one of the parties, such party cannot enforce it specifically against the other.

APPEAL from the District Court of the Fourth Judicial District, for Lincoln County. Hon. James R. Bothwell, Judge.

Action to compel specific performance of a contract for the sale of stock. From judgment for plaintiff, defendant appeals. *Reversed* and *remanded,* with instructions to dismiss.

W. G. Bissell, for Appellant.

Under the pleadings, as well as the general law relating to suits in specific performance, it was necessary for the plaintiff, in order to establish his case, to prove that the defendant was the owner of the stock in question, and therefore could specifically perform. (*Kennedy v. Hazelton,* 128 U. S. 667, 9 Sup. Ct. 202, 32 L. ed. 576; *Lane v. Crossman,* 58 Ill. App. 386; *Chartier v. Marshall,* 51 N. H. 400; *Clifton v. Charles,* 53 Tex. Civ. 448, 116 S. W. 120; *Lamb v. General Film Co.,* 130 La. 1026, 58 So. 867; *Blair v. Lowrey* (Tex. Civ.), 164 S. W. 14; *Morgan v. Bell,* 3 Wash. 554, 28 Pac. 925, 16 L. R. A. 614; *Morrisey v. Strom,* 57 Wash. 487, 107 Pac. 191.)

"Before specific performance to take or deliver corporate stock may be decreed it is necessary that the agreement should not involve any breach of trust, nor include the performance by either party of obligations, the performance of which equity cannot practically enforce.

"Unless equity can decree specific performance of the whole contract, it will not interfere to enforce any part of it, and specific performance will not be enforced unless the remedy is mutual." (*Deitz v. Stephenson,* 51 Or. 596, 95 Pac. 803; *Ross v. Union Pacific Ry. Co.,* Woolw. 26, Fed. Cas. No. 12,080; *Pullman Palace Car Co. v. Texas & Pac. Ry. Co.,* 11 Fed. 625, 4 Wood, 317; *Beard v. Linthicum,* 1 Md. Ch. 345.)

"Specific performance of a contract will not be enforced against one party, if it cannot be enforced against the other." (*Whiteaker v. Vanschoiack,* 5 Or. 113.)

"Specific performance of a contract can only be decreed where the remedy is mutual." (2 Beach, Mod. Eq. Jur. 585; Pomeroy, Spec. Performance, secs. 162, 163.)

Sweeley & Sweeley, for Respondent.

As the time limit fixed by the trial judge for the preparation of the transcript had expired, the subsequent orders were without effect, and the trial judge had no jurisdiction

of the matter or power to settle or allow the transcript. (*Coon v. Sommercamp,* 26 Ida. 776, 146 Pac. 728; *Stout v. Cunningham,* 29 Ida. 809, 162 Pac. 928; *Boise-Payette Lumber Co. v. McCarthy,* 31 Ida. 305, 170 Pac. 920; *Hansen v. Boise-Payette Lumber Co.,* 31 Ida. 600, 174 Pac. 703; *Iowa State Savings Bank v. Twomey,* 31 Ida. 683, 175 Pac. 812; *Robinson v. St. Maries Lumber Co.,* 32 Ida. 651, 186 Pac. 923; *Bergh v. Pennington,* 33 Ida. 198, 191 Pac. 204.)

"Equity may compel specific performance of a contract to sell corporate stock, where the value of the stock is not easily ascertainable or where the stock is not obtainable elsewhere or where there is some reasonable cause for the buyer requiring a delivery of the stock contracted for." (*Deitz v. Stephenson,* 51 Or. 596, 95 Pac. 803; *Krouse v. Woodward,* 110 Cal. 638, 42 Pac. 1085; *Turley v. Thomas,* 31 Nev. 181, 135 Am. St. 667, 101 Pac. 568; *Gilfallan v. Gilfallan,* 168 Cal. 23, Ann. Cas. 1915D, 784, and cases cited in notes 141 Pac. 623.)

LEE, J.—This action was commenced by respondent Moody against appellant Crane for specific performance, to compel the conveyance of 1,150 shares of the capital stock of the Morton Realty Company, a domestic corporation, and 20,000 shares of the capital stock of the Buckeye Ranch Company, also a domestic corporation, according to the terms of a contract entered into between the parties on March 18, 1916, which, with its modifications and amendments, is pleaded *haec verba* in the complaint. Appellant represented in this contract that he owned 1,150 shares of the capital stock of the Morton Realty Company, which was capitalized for 2,000 shares, and that its property consisted of farm property known as the Buckeye Ranch, situate near Hagerman, in Lincoln County, and certain personal property in the way of farm implements, and was free from indebtedness except for a mortgage of $50,000, which he owned, but which was being foreclosed. Respondent was to take all risk of the foreclosure proceedings, and appellant agreed to pay the

costs and expenses of such litigation up to the entry of the final decree. Following the execution of this agreement, additional conditions were added thereto, whereby respondent guaranteed to appellant the payment of a certain balance due on a contract for the sale of certain real estate in Umatilla county, Oregon, which was to be taken by appellant as part payment of the $31,000 which respondent was to pay for said 1,150 shares of corporate stock. In addition to this sale contract for the corporate stock, appellant attached an order thereto, directing the Boise City National Bank to deliver all papers pertaining to the transaction to respondent or order, upon payment to it, for the use and benefit of appellant, of $21,760.75, evidenced by ten interest-bearing notes, aggregating that amount. These several agreements covering this transaction were drawn by appellant's attorney, who with the consent of both parties retained the original papers for the purpose of depositing all documents pertaining to the transaction with the Boise City National Bank, after respondent had executed a conveyance of his interest in the Oregon property and furnished an abstract showing merchantable title thereto, to the satisfaction of said attorney.

Appellant's answer admits the execution of said sale agreement, but by way of legal conclusion denies that he sold respondent said 1,150 shares of the stock of the Morton Realty Company or 20,000 shares of the stock of the Buckeye Ranch Company, and alleges that he was not the owner of the stock in question at the time he entered into the agreement to sell the same, and also denies that respondent executed and delivered to him nine negotiable promissory notes in the sum of $20,000. That is, while the answer admits the execution of all of the instruments set out by respondent's amended complaint, it then attempts to specifically deny all of the material allegations of said complaint, except the signing of said sale agreement, and affirmatively pleads that at the time appellant signed the same he owned only 855 shares of said Morton Realty Company's corporate

stock; that prior to making said agreement he had fully informed respondent that all of said stock mentioned in said sale agreement in excess of 855 shares was involved in litigation with third parties; that prior to completing said sale agreement with respondent such litigation had resulted adversely to his claim, and that he was not able to secure more than 835 shares; and therefore by its terms, conditions and nature this was not such a contract as the court could specifically enforce.

Upon issues thus joined the cause was tried to the court. Respondent offered his proof and rested, and thereupon appellant moved for a nonsuit, on the ground that respondent's evidence showed that he was not entitled to specific performance, because respondent was bound to both allege and prove appellant's ownership of a majority of the capital stock of said corporation, and also for the reason that respondent had not complied with the conditions of said agreement on his part to be kept and performed. The motion was denied, and appellant stood on the same and failed to offer any evidence in support of his answer. Findings, conclusions and decree were entered, awarding specific performance, from which decision this appeal is taken.

Respondent moved to strike the reporter's transcript from the record on appeal, on the ground that said reporter's transcript had not been prepared, lodged and served, settled and filed in the manner and within the time required by law and the rules of this court. This appeal was perfected August 27, 1917, and on the same day the trial court ordered the reporter to prepare his transcript, giving him forty days within which to do so; this order was made upon application of appellant, who deposited the estimated cost of such transcript. No further orders were applied for or made by the trial court until February 9, 1918, when it gave an additional sixty days. On May 13th thereafter it extended the time to July 13, 1918. The reporter's transcript was lodged on July 14, 1918, and was settled on August 8, 1918, by the Hon. James R. Bothwell, who had been presiding judge at the

trial of said cause. On July 9th respondent's counsel objected to the settlement of the transcript, particularly relying on the ground that appellant had not kept alive the orders of the district court extending the time to prepare the reporter's transcript, and that all such orders for extensions of time had been made after the time given by a former order had lapsed. To rebut any presumption of negligence, appellant filed a certificate of the judge, stating that the reporter's transcript was prepared in its regular order and lodged in the shortest possible time that could be done under existing conditions; that there had been no unnecessary delay in its preparation; and that the delay was caused by the preparation of other transcripts which had been previously ordered. The reporter makes an affidavit to the same effect, and states that at the time of obtaining the first order, appellant's counsel was advised that said transcript could not be prepared for some five or six months. Appellant, being so informed, on September 6, 1917, applied to the chief justice of this court, who signed an order giving appellant sixty days after completion of the reporter's transcript within which to file, in this court, his transcript on appeal.

It appears from this record that the reporter's transcript was prepared, lodged and served as soon as the reporter could prepare the same, without displacing the preparation of other transcripts which had been previously ordered. Appellant's negligence, if any, consists in his not applying to the trial court for an extension of time, in each case, before the time given by the previous order had expired. Respondent contends that it was the duty of appellant to keep these orders for an extension of time alive, and that any subsequent order extending such time, after the time granted by the previous order had lapsed, is ineffective.

The motion to strike the reporter's transcript from the transcript on appeal will first be considered.

Subdivision 1 of C. S., sec. 6886, requires any party desiring to procure a review on appeal to the supreme court of any ruling of the district court, or of the sufficiency of the

evidence to sustain the verdict or decision, in lieu of a bill of exceptions to procure from the district judge an order directing the reporter to prepare an original and four carbon copies of a transcript, limiting the time within which the reporter shall complete and lodge the same with the clerk, and serve a copy of such order upon the reporter, and pay him the estimated costs of such transcript. It shall then be the duty of the reporter to forthwith prepare such transcript, and to complete the same and lodge the original and copies with the clerk of the district court within the time allowed by such order, *"or within such further time as the district judge may by order allow."*

C. S., sec. 7163, requires the appellant on appeal from a final judgment to furnish the court with copies of: (a) notice of appeal, (b) judgment-roll, (c) any bill of exceptions *or reporter's transcript settled as prescribed by C. S., sec. 6886.*

C. S., sec. 7166, requires the appellant within five days from the filing of the notice of appeal to file with the clerk a praecipe for a transcript of the papers he desires, and to pay the clerk for the same at the rate of ten cents per folio for the original and four carbon copies, and a further fee of $5 for the services and expenses of the clerk in certifying and transmitting the said transcript to the clerk of the supreme court. Appellant at the same time must deposit with the said clerk the filing fees required by the rules of this court.

The remaining subdivisions of this section require the clerk to prepare an original and four carbon typewritten copies of all papers designated by the *praecipe, with the exception of the reporter's transcript prepared under C. S., sec. 6886,* and deliver two copies to the appellant or his attorney, and bind the three remaining copies with any reporter's transcript prepared under C. S., sec. 6886, and append thereto his certificate, and transmit the original and two copies to the clerk of this court, with the filing fees, within such time as is now or shall be designated by the rules of the supreme court.

Rule 20 of this court (edition of 1915), then in force, provided:

" . . . . That in case the reporter is unable from any cause to complete such transcript within the time limit so fixed, the reporter shall himself make and present to the district judge a written application, copy of which he shall transmit to appellant's attorney, stating the reasons for the delay and the extension of time required to complete such transcript; whereupon the district judge may grant such extension of time as appears to him to be necessary or proper. Upon the failure or neglect of the reporter to make such application, and where it appears that he is unable from any cause to complete the transcript within the time fixed, application in writing for an extension of time may be made by any party interested in the appeal, giving notice of time and place of hearing of motion, etc."

Rule 26 provided that in all cases where an appeal was perfected or writ of error issued that the transcript of the record must be served upon the adverse party and filed in this court within sixty days thereafter. Rule 28 provided that this time might be extended by an order of this court or a justice thereof, upon good cause shown. Rule 29 provided that if the transcript of the record was not filed within the time prescribed by Rule 26, the appeal or writ of error might be dismissed on motion without notice.

The question as to whether or not the reporter's transcript should be stricken from the record on appeal depends on the proper construction of C. S., sec. 6886, sec. 7166, and the rules above referred to. In *Fischer v. Davis,* 24 Ida. 216, 133 Pac. 910, respondent moved for a dismissal of the appeal (1) because the reporter's transcript was not completed and lodged within the time required by subd. 1 of R. C., sec. 4434 (now C. S., sec. 6886); (2) because the trial court purported to grant an extension of time in contravention of Rule 77 (Amendments of June, 1911, to 1910 Rules), and appellant failed to complete his transcript within the time allowed by that rule; (3) because the trial judge was without jurisdic-

tion to settle the transcript under the facts in the case; (4) because the transcript on appeal was not filed within sixty days from the perfecting of the appeal, and no extension of time was asked for or had been obtained. This court, speaking through Ailshie, C. J., *inter alia* said:

"A failure on the part of either the court reporter to prepare a transcript of his notes or on the part of the clerk of the district court to prepare and deliver a transcript or file the same in the supreme court cannot result in or work a dismissal of the appeal, unless the appellant has in some way contributed to or encouraged the delay and failure on the part of the proper officer to act.

"*Held*, that under the provisions of sec. 4434 of the Rev. Codes, as amended by c. 119 of the Session Laws of 1911 (1911 Sess. Laws, p. 379), it was the purpose and intent of the legislature to vest the jurisdiction and authority in the district judge to control the getting out of reporter's notes and to grant necessary extensions of time for the reporter to transcribe his notes and to make all orders in relation thereto."

Unless the rule in *Fischer v. Davis, supra,* has been modified or overruled, it seems clear that after the appellant has filed his praecipe and deposited the required fees, that it is the duty of the reporter to prepare the reporter's transcript within the time allowed by the order, or such additional time as may be given, and that it is the duty of the reporter to obtain such extension of time for the preparation of such transcript as may be necessary, and that it cannot be stricken from the record on appeal by reason of the failure of appellant to obtain the order for an extension of such time, unless he has contributed to such delay.

The authorities which respondent relies upon in support of his motion to strike the reporter's transcript will be considered, the first one being *Coon v. Sommercamp*, 26 Ida. 776, 146 Pac. 728. The motion to dismiss the appeal, as far as the reason is material to this inquiry, was "that the transcript was not filed within the statutory time." It was not

filed until eighty-five days after the perfecting of the appeal, and no *praecipe* for a reporter's transcript had been properly filed or served, and the *praecipe* for the clerk's transcript had not been filed within five days from the notice of appeal. It was held that under these facts there was a failure to comply with the statute and Rules 23 and 26 of this court, and the appeal was dismissed, no reference being made to *Fischer v. Davis, supra.* But the court says: "It is the duty of appellant to procure from the district judge the necessary orders directing the reporter to prepare a transcript of the evidence . . . . "

The next case relied upon is *Stout v. Cunningham,* 29 Ida. 809, 162 Pac. 928. A demurrer to the amended complaint was sustained, and plaintiff failed to plead further. His cause was dismissed October 16, 1915, and on January 13, 1916, he perfected an appeal from the order of dismissal. On April 1st following, the time for filing his transcript on appeal having expired, he obtained from a justice of this court an extension of time until May 1, 1916, which was subsequently extended to June 1st thereafter. The transcript on appeal was served May 5, 1916, and on May 10th following a motion was made to dismiss the appeal on the ground that the transcript had not been filed in this court within sixty days after the appeal was taken, as required by Rule 26 of this court, and that the order extending the time was ineffectual, it having been made after the time for filing such transcript had expired. It was held that the failure to file and serve the transcript within the time fixed by the rules of this court is not jurisdictional, but that a failure to file such transcript before the expiration of the sixty days, or the expiration of any subsequent period to which the time had been extended, was sufficient ground for dismissing such appeal under Rules 26 and 28 of this court.

*Boise-Payette Lumber Co. v. McCarthy,* 31 Ida. 305, 170 Pac. 920, was an application for an alternative writ to require the district judge to settle a reporter's transcript prepared for use on an appeal that had been prematurely taken.

The appeal for which the reporter's transcript was sought to be used had been perfected April 21, 1917, and was not again served on respondent in this appeal until June 5, 1917, it being all the while in appellant's possession. The court held, following *Bohannon Dredging Co. v. England,* 30 Ida. 721, 168 Pac. 12, that C. S., sec. 7166 (R. C., sec. 4820a), is mandatory, and a failure to comply with the same divests this court of jurisdiction to entertain the appeal, saying:

"The constitution has committed to the legislature and not to the court the task of prescribing what the record on appeal shall contain, and the method by which it shall be prepared and authenticated."

*Fischer v. Davis, supra,* is not referred to, but it confirms one of the rules there announced, that the time for taking an appeal, and the method of preparing the transcript on appeal, is governed by the provisions of the statute referred to, and that any rule of this court in conflict therewith cannot modify or abrogate the provisions of the statute with reference thereto.

The case of *Hansen v. Boise-Payette Lumber Co.,* 30 Ida. 801, 168 Pac. 163, was an original application to this court to settle a reporter's transcript, which was denied for the reasons that: (1) the reporter's transcript did not accompany the petition, and there was nothing before the court upon which it could act, and (2) that under R. C. 4432 (C. S., sec. 6884) and Rule 9 of this court, its power is restricted to cases where the trial court fails to allow an exception, and not where it refuses to settle the transcript as a whole; and that appellant's remedy, if such refusal was wrongful, was by mandamus to compel the trial court to act.

*Boise-Payette Lumber Co. v. McCarthy, supra,* was an original proceeding to obtain a writ of mandate to compel the trial judge to settle the reporter's transcript, and was denied for the reasons already referred to.

In *Hansen v. Boise-Payette Lumber Co.,* 31 Ida. 600, 174 Pac. 703, appellant company perfected its appeal April 23,

1917, at which time a complete transcript prepared for use in a former appeal was held by appellant's attorney. On February 28, 1918, the clerk's transcript was served on respondent's attorney and filed in this court as the record on appeal. Rule 26 of this court, as it stood previous to February 10, 1918, required the record on appeal to be served and filed within sixty days after such appeal had been taken, and Rule 28 provided that the time during which the court or judge held a reporter's transcript prior to settlement should be excluded in computing the time. On June 18, 1917, the reporter's transcript was submitted to the trial court for settlement, and on September 15th following the trial judge refused to settle it. Application was made to this court to settle the same, which was denied (*Hansen v. Boise-Payette Lumber Co., supra*), and a writ of mandate from this court was sought to compel the trial judge to settle such transcript, which was on February 18, 1918, denied (*Boise-Payette Lumber Co. v. McCarthy, supra.*) Appellant contended that under Rule 28 the time required for these various proceedings should be excluded in computing the time to settle the reporter's transcript, and that it could not safely have filed the record on appeal in this court until it was finally determined whether the reporter's transcript was entitled to be settled and included in such record. This court held, in answer to such contention, that appellant should have applied for an extension of time, and a sufficient showing of diligence not having been made, the appeal was dismissed.

In *Iowa State Savings Bank v. Twomey,* 31 Ida. 683, 175 Pac. 812, it is held that where a transcript on appeal has not been filed within the time limited by the rules or an extension thereof, such appeal will upon motion be dismissed, in the absence of a sufficient showing of diligence by appellant, and that a failure to apply for an extension of time within which to file a transcript negatives the question of diligence.

In *Robinson v. St. Maries Lumber Co.*, 32 Ida. 651, 186 Pac. 923, respondent moved to strike the reporter's transcript for the reasons: (1) that the same was not lodged with the clerk within the time provided therefor by the order of the trial court, or any extension of time granted by such court; (2) that it does not show that the reporter's transcript was served upon the respondent within the time provided therefor by law; (3) that the transcript of testimony was not settled by the trial court or judge as required by statute. The order for the reporter's transcript was made on April 5, 1918, and required that it be lodged within thirty days, and it was not lodged until October 15, 1918. On November 22d following, a stipulation between the parties was filed, wherein it was stipulated that the reporter's transcript was received by appellant October 15th and served on respondent October 16, 1918, and that it might be corrected and settled as corrected; the trial court made an order that the transcript be settled and lodged, and certified to be a transcript of the evidence taken and transcribed in the action. This court held that the stipulation waived respondent's objection that it was not lodged within the time ordered or some extension thereof. Then follows an extensive review of the cases relating to this question, many of which were decided prior to the amendments found in the 1911 Session Laws, changing the law with reference to appellate procedure, and the court concludes:

"While the foregoing opinions may be, and probably are, contradictory and confusing, we think the true rule is as follows: The matter is not jurisdictional, but if the reporter's transcript of the testimony be not lodged with the clerk within the time prescribed in the order of the judge, or an extension thereof, *granted before the expiration of the time already allowed,* upon proper and seasonable objection to the trial judge, he should refuse to settle the transcript, unless it be shown that the lapse of time occurred without fault on the part of appellant. But the respondent will be held to have waived objection that the transcript was not lodged in time

by any affirmative action indicating consent to its settlement, or the use thereof for any purpose after settlement.''

In *Bergh v. Pennington*, 33 Ida. 198, 191 Pac. 204, this court held that where appellants do not show that the failure of the reporter to lodge his transcript with the clerk of the court below within the time granted by the trial judge is without fault on their part, the trial judge should refuse to settle the same; and even though settled by the trial judge, the transcript will upon motion be stricken from the record on appeal.

As was said in *Robinson v. St. Maries Lumber Co., supra,* the decisions rendered since the Fischer-Davis case was decided are confusing, if not contradictory, and certainly not always in harmony with the rule announced in that case. But none of them criticise, qualify or directly overrule it, and in view of the general acceptance of the rule as there announced, this court would not be warranted in striking the reporter's transcript from the record on appeal in case at bar, under the facts and circumstances as they appear from the record.

Passing to a consideration of the merits of the questions presented by this appeal, the errors relied upon may all be considered under the assignment that the court erred in its conclusions of law, and that its judgment is contrary to law and not supported by the evidence.

Appellant's course of action in this matter is not such as to meet the approval of a court of equity. He admits the execution of the contract pleaded as the basis of respondent's cause of action, which was prepared by his counsel and under his direction, after extended negotiations and consideration as to its terms, and to have entered upon its performance and induced respondent to do so. Later concluding that it was to his advantage to refuse to perform, he has made no *bona fide* effort to do so, and seeks to defeat a decree for specific performance by urging, among others, a number of objections which are without merit. He contends that respondent should allege and prove that he was

the owner of this stock in question, but that he has failed to do so. The complaint alleges that "appellant is the owner of 1,050 shares of this stock," and the answer "denies that he was on the eighteenth day of March 1916, or ever has been, or now is, the owner of 1,050 shares of the Morton Realty Company's stock, or was or now is able to transfer to the plaintiff the said 1,050 shares of stock." This denial is not sufficient to put in issue said averment of ownership, and the same may be said with regard to a number of others, which are in the form of conjunctive denials, denials in the language of the pleading, or in the form of a negative pregnant, which do not put in issue the allegation of the complaint intended to be denied. (*Leroux v. Murdock*, 51 Cal. 541; *Scott v. Superior Sunset Oil Co.*, 144 Cal. 140, 77 Pac. 817; note to *Humphreys v. McCall*, 70 Am. Dec. 634; Pomeroy's Code Remedies, 4th ed., sec. 509.)

Appellant further complains that the notes executed by respondent in part payment of the purchase price of this stock contain a clause which renders them usurious and unlawful, and that their execution and delivery in this form is tantamount to a failure on the part of respondent to perform at all this provision of the contract, although respondent, immediately upon having his attention called to this objectionable clause, offered to have it stricken. C. S., sec. 5672, requires that all objections to the mode of an offer of performance which the creditor has an opportunity to state at the time the offer is made, and which can be obviated, are waived if not stated, which is a correct rule of law in the absence of such a statute. (*Schwerin Estate Realty Co. v. Slye*, 173 Cal. 170, 159 Pac. 420; *Winkler v. Jerrue*, 20 Cal. App. 555, 129 Pac. 804; *Kofoed v. Gordon*, 122 Cal. 314, 54 Pac. 1115.)

However, upon a consideration of the entire record, we feel compelled to hold that the judgment below cannot be sustained, and that specific performance of the contract in question cannot be decreed, for the reasons hereafter stated. The purchase price which respondent was to pay for this

stock was $31,000, $9,000 of which was to be paid by a conveyance of certain real property owned by appellant in Oregon, and he caused to be executed the necessary conveyances and deposited them with appellant's attorney. The remainder of the consideration, approximately $21,000, was to be paid by the ten promissory notes, maturing annually thereafter for a period of ten years. The stock which respondent was to receive was to be hypothecated with the Boise City National Bank to secure the payment of these notes. But this stock, or a part of it, had already been pledged by the appellant to this bank to secure the payment of an indebtedness of like amount owing by him to this bank, which matured long prior to the maturity of the notes given to him by respondent. The bank could not be deprived of its lien or possession of this pledged stock, nor could the terms of the pledge be changed, without its consent, nor can the court make any order in this action relative to this stock affecting the interests of the bank, unless it was a party to the action; and it nowhere appears that it was served with process or that it entered an appearance therein. The decree provides that the notes executed by respondent, together with the deed for the Oregon land, be turned over to the Boise City National Bank for the use and benefit of appellant, and that if at the time such decree is signed any part of the amount of said contract has been received by appellant, such sum shall be paid to said bank, and all sums so paid on account of such contract shall be applied upon the indebtedness held by said bank against appellant. It is apparent that this provision of the decree cannot be enforced against the bank, which is not a party to the action. (*Stanton v. Singleton,* 126 Cal. 657, 59 Pac. 146, 47 L. R. A. 334.)

The decree also provides that no interest shall be collected on these notes given by respondent to appellant, prior to the date of this decree, but that the same draw interest from the time appellant carries out and performs the orders of the court. This stock being held by the Boise City National Bank, as pledgee, for the payment of an indebtedness due

it from appellant, and no agreement appearing to have been made by the interested parties whereby the obligations of the respondent to the bank were to be substituted for those of the appellant upon the conditional transfer of this stock, if the bank, having an earlier maturing obligation, elected to enforce the same against this stock for which it was pledged, by a sale of the same, it would result in obliterating appellant's title, and a delivery to respondent could not be made. A court of equity will not decree specific performance of an executory contract when there is no method available by which its decree can be enforced. No matter how inadequate might be the remedy at law, if the contract is of such a nature that obedience to the decree could not be obtained by the ordinary processes of the court, chancery will decline to interfere. (*Leonard v. Board of Directors,* 79 Ark. 42, 9 Ann. Cas. 159, 94 S. W. 922; *Sellers v. Greer,* 172 Ill. 549, 50 N. E. 246, 40 L. R. A. 589.)

This contract further provides that these shares of stock, for the delivery of which respondent seeks a decree in specific performance, together with said notes and mortgage and the stock of the Buckeye Ranch Company, shall be deposited with the Boise City National Bank in escrow, to be delivered to the second party, respondent herein, or order, upon the payment of the above amount, in accordance with the terms of the escrow instructions; and respondent further agrees that he or his assigns will not encumber or permit to be encumbered the Buckeye Ranch Company or the Morton Realty Company property, without the written consent of the first party, and will cause said Morton Realty Company, through its proper officers, to enter a contract that said company will not encumber or cause to be encumbered the said Buckeye Ranch Company or Morton Realty Company's property. It is clear that a court of equity cannot compel respondent to carry out this part of the contract. The corporate powers, business and property of all corporations must be exercised, conducted and controlled by the board of directors, and they are invested with discretion and required

to manage its affairs in the interest of its stockholders; a court cannot by decree control this discretionary power. If this part of the contract with reference to procuring an agreement from the board of directors cannot be specifically enforced, it being a material part of the contract, renders the contract unenforceable in specific performance by either party. (*Hopkins v. Roseclare Lead Co.*, 72 Ill. 373; *Humphrey v. McKissock*, 140 U. S. 304, 11 Sup. Ct. 779, 35 L. ed. 473; *Smith v. Hurd*, 12 Met. (Mass.) 371, 46 Am. Dec. 690.)

It is a well-settled principle of equity that a contract will not be specifically enforced unless there is a mutuality of obligation and of remedy. (Pomeroy's Specific Performance, sec. 165; *Whiteaker v. Vanschoiack*, 5 Or. 113; *Deitz v. Stephenson*, 51 Or. 596, 95 Pac. 803; *Hissam v. Parrish*, 41 W. Va. 686, 56 Am. St. 892, 24 S. E. 600; *Litz v. Goosling*, 93 Ky. 185, 19 S. W. 527, 21 L. R. A. 127; *Iron Age Publishing Co. v. Western Union Tel. Co.*, 83 Ala. 498, 3 Am. St. 758, 3 So. 449; *United States v. Noe*, 64 U. S. 312, 16 L. ed. 462.)   And it is generally held that when a contract for any reason cannot be enforced against one of the parties, such party will not be permitted to enforce it specifically against the other party, although it might otherwise have been enforceable.   (Note to 31 L. R. A., N. S., 496–D, Mutuality of Remedy; *Mutual Life Ins. Co. v. Stephens*, 214 N. Y. 488, 108 N. E. 856, L. R. A. 1917C, 809; *Grimmer v. Carlton*, 93 Cal. 189, 27 Am. St. 171, and note at p. 173, 28 Pac. 1043; *Hawralty v. Warren*, 18 N. J. Eq. 124, 90 Am. Dec. 613.)

We hold this contract cannot be enforced by specific performance, and the judgment of the court below granting such relief is hereby reversed and the cause remanded, with instructions to dismiss the bill.   Costs awarded to appellant.

McCarthy and Dunn, JJ., concur.

RICE, C. J., Concurring.—I concur in holding that the contract involved in this case will not support a decree of specific performance on account of the impossibility of mutuality of remedy.

I am of the opinion, however, that the reporter's transcript should have been stricken. I have understood C. S., sec. 6886, to require that the court's order to a reporter for the preparation of a transcript must be kept alive, and that a lapse of time in the orders of the court below for the preparation of such transcript is fatal unless it occurred without fault on the part of appellant; that a lapse is not jurisdictional in the strict sense of the term, in that it could not be waived. I have understood that appellants would be free from fault in such matters only when they had been misled by promises on the part of the reporter or the respondent, or are in such situation that for a trial judge to refuse to settle or this court to strike a transcript would in effect result in defrauding them of their rights.

BUDGE, J., Concurring.—I agree with the conclusion reached in the majority opinion of the court that specific performance of the contract involved in this litigation cannot be enforced.

The only ground relied upon by respondent to strike the reporter's transcript from the files and to dismiss the appeal is that appellant's counsel failed to procure an extension of the court's order directing the reporter to prepare the transcript before the order procured in the first instance had lapsed.

The failure to obtain the order directing the reporter to prepare a transcript is not jurisdictional; otherwise it could not be waived. (*Robinson v. St. Maries Lumber Co.,* 32 Ida. 651, 186 Pac. 923.)

C. S., sec. 6886, does not in terms provide that the transcript will be stricken and the appeal dismissed where counsel for appellant fails to procure an order from the district judge extending additional time to the reporter within which to get out his transcript, before the expiration of the original order. It does not in specific terms place the duty of keeping this order alive either upon the reporter or appellant's counsel, but a reasonable interpretation of this statute places that duty upon both.

My understanding is that this court has not gone to the extent of holding that an appellant would be free from fault only when he had been misled by promises on the part of the reporter or the respondent, but that the question of diligence on the part of appellant or his counsel always has been the controlling factor in determining whether the transcript should be stricken and the case dismissed. I am still of the opinion that it is the duty of the attorney for appellant to use due diligence to see that the order for the preparation of the transcript is kept alive, and where such diligence is shown, a motion to strike the transcript should not be sustained.

This court has held upon numerous occasions, as will be seen by an examination of the authorities cited in the majority opinion, that it will not strike the transcript and dismiss the appeal for failure to file the transcript in this court within the time prescribed by the rules of this court, where a sufficient showing of diligence upon the part of appellant is made.