299 P.2d 758

Martin T. BYRNE, Robert Doolittle, Frank A. Naccarato, Seymour Katims, and Frank H. Anselmo, Jr., Directors of the Bank of North Idaho, Inc., Plaintiffs-Respondents,

v.

James C. MORLEY, Barbara Turner Lang, John R. Mitchell, Robert K. Kelly and Margie Kelly, Defendants-Appellants.

No. 8250.

Supreme Court of Idaho.

July 5, 1956.

Harold S. Purdy, Coeur d'Alene, Bandelin, Bandelin & Ponack, Sandpoint, Chester A. Lesh, Earl A. Phillips, Seattle, Wash., for appellants.

Edward J. Bloom, San Francisco, Cal., Greene & Hunt, James E. Hunt, and Raymond T. Greene, Jr., Sandpoint, Fred F. Kondo, Priest River, for respondent.

TAYLOR, Chief Justice.

This action was brought to determine the validity of actions taken at a special stockholders' meeting and at a purported adjourned session thereof. At the time involved, the corporation, the Bank of North Idaho, Inc., had 400 shares of capital stock outstanding. The plaintiff, Martin T. Byrne, was the owner of 105 shares and his wife, Mary Agnes Byrne, was the owner of 100 shares. November 2, 1953, Byrne, for himself and as attorney-in-fact for his wife, gave to defendant James C. Morley an option to purchase the Byrne stock, and also a proxy for the same stock. The proxy on its face recites that it is "an irrevocable proxy coupled with an interest." December 16, 1953, the following cancella-

tion was written across the face of the option and signed by the parties: "This option to purchase corporate stock is cancelled by Mutual Consent of Parties concerned. Subject to new instrument. Dec. 16—1953 /s/ Martin T. Byrne /s/ J. C. Morley." And the proxy was cancelled in the same manner in the following terms: "This Stock Proxy is cancelled By Mutual Consent of Parties concerned Subject to New Instrument Dec 16—53 /s/ Martin T. Byrne, /s/ J. C. Morley."

The defendant Morley was a director, president and manager of the bank, and the other defendants were directors or officers.

Morley refused to make certain loans requested by Byrne and attempted to collect loans previously made to Byrne. Byrne and his associates desiring to change the management of the bank, called a special meeting of the stockholders for that purpose, to be held at the office of the bank at 7:30 p. m., September 15, 1954. The trial court found that this meeting was duly called pursuant to the by-laws and the statute, §§ 30-133, 26-214 I.C. The meeting was not called by the secretary, defendant Lang, and no request was made of her to do so by the shareholders who called the meeting. The court found that the secretary, being a member of the Morley faction, such a request would have been useless. Notice of the time, place and purpose of the meeting was timely given to each stockholder according to law.

When the meeting opened all outstanding shares were present and represented by owners or proxies, except 5 shares, the owner of which acknowledged that he had received due notice of the meeting. Byrne and wife were present, but Morley (who presided at the meeting) and his adherents excluded them from the meeting and refused to allow them to vote their stock, and purported to vote the Byrne stock by virtue of the aforesaid proxy. So conducted the meeting purported to approve the minutes of a previous meeting and adjourn. Relative to this action the court found as follows:

"Actually, that motion was lost by a plurality of the votes cast and for the further fact that the Byrnes stock had been excluded from the meeting. Any record to the contrary in the minutes of that meeting prepared and placed among the bank's records by defendants Morley and Lang is a falsity. Following above void motion of adjournment, defendant Morley and his adherents dissolved the meeting, and, after a short delay, all stockholders except those who had voted for the two motions mentioned above were locked out of the bank premises. These latter stockholders, namely those opposed to the Morley faction, then met with above Martin T. Byrne and Mary Agnes Byrne at the locked front door of the bank. These excluded stock-

holders then represented, and were entitled to vote, 370 shares out of total 400 shares of stock outstanding. It was then lawfully moved, seconded and unanimously carried that the meeting recess to the Olive Woods residence, near Priest River, Idaho, and in Bonner County, Idaho. That recessing was legal, valid, binding and effective."

At the meeting thereafter resumed in the Olive Woods residence, the shareholders present voted the defendants out of office as directors and officers of the bank, amended by-law No. 19 to provide for a board of only five directors, and elected the plaintiffs as a new board of directors. The defendants refused to recognize the election of the plaintiffs and refused to deliver possession of the bank. This action followed. The district court found that plaintiffs were the duly and lawfully elected directors and entered judgment against defendants, from which they brought this appeal.

Two questions are presented: first, was Morley entitled to vote the Byrne stock; and second, could the directors be removed from office by vote of the shareholders at a special meeting lawfully called for that purpose?

█ It is appellants' contention that directors of a bank can be removed pursuant to order of the commissioner of finance, as provided by § 26–407 I.C., of the bank act, or at the annual meeting, § 26–406 I.C., and cannot be removed at a special meeting of the shareholders under the general business corporation law. This issue has been settled by this court adversely to appellants in Doolittle v. Morley, 77 Idaho 366, 292 P.2d 476.

█ The trial court found that the proxy given by Byrne to Morley was void for want of consideration and also that it had been cancelled. The statute provides, "a proxy, unless coupled with an interest, shall be revocable at will notwithstanding any other agreement or any provisions in the proxy to the contrary." § 30–134, subd. 3, I.C. The court found that the option was the "interest" with which the proxy was coupled, and that nothing had been paid therefor. However, appellants urge that the consideration back of the option and the proxy was Morley's agreement to manage the bank, and that the instruments were executed to secure him in that position. Even so, a serious question arises as to the validity of such consideration. It is subject to question on the ground of public policy. 5 Fletcher Cyclopedia Corporations, Perm. Ed. § 2065. It may also be questioned for want of mutuality. Generally an executory contract for personal services cannot be specifically enforced. 81 C.J.S., Specific Performance, §§ 11 and 82; Moody v. Crane, 34 Idaho 103, 199 P. 652; Sherman v. Watson, 58 Idaho 451, 74 P.2d 181.

In any event, the proxy, whether coupled with a valid and enforceable interest or not, was effectively cancelled by the parties so far as it affected the voting right. Referring to the cancellation of the proxy and the words, "Subject to new instrument", added thereto by Morley when he signed, the trial court properly found and concluded:

"The wording underlined was inserted by defendant Morley. At the time of his signing that cancellation, defendant Morley was a reasonably prudent man of average intelligence and as such intended that cancellation to be immediately effective; otherwise he would not then have signed it. His insertion of the underlined phrase was done by him merely for his future protection in regard to the 'new agreement', whatever it was. That cancellation was effective immediately upon its signing by the two parties, and by that signing defendant Morley relegated himself and his rights to a separate action for specific performance, or for damages against plaintiff Martin T. Byrne in regard to that 'new agreement', whatever it was."

Byrne and his wife were entitled to participate and vote their stock at the meeting when it opened in the bank. The subsequent action by them, and the other shareholders voting with them, was the lawful action of the shareholders, whether their meeting be regarded as a continuance of the meeting opened in the bank or an adjournment thereof.

"An adjournment or adjournments of any annual or special meeting may be taken without new notice being given." § 30–133, subd. 3, I.C.

The findings of the trial court are sustained by the evidence.

Judgment affirmed. Costs to respondents.

KEETON, ANDERSON and SMITH, JJ., and BAKER, District Judge, concur.